Morris R. STEENSON, Plaintiff,

v.

John O. MARSH, Jr., Secretary of the Army; MG Will Hill Tankersley, Commanding Officer 87th USA Maneuver Area Command, Dept. of the Army; MAJ Benjamin L. Payton, Adjutant General, 87th USA Maneuver Area Command, Dept. of the Army, Defendants.

Civ. A. No. CV85–PT–1150–S.

United States District Court,
N.D. Alabama, S.D.

May 23, 1985.

Albert L. Jordan, Fitzpatrick & Jordan, Birmingham, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, George C. Batcheler, Asst. U.S. Attys., Birmingham, Ala., Major Anthony V. James, Dept. of the Army, Washington, D.C., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on cross motions to dismiss, or in the alternative, for summary judgment and a trial on the merits. The plaintiff filed a complaint seeking a temporary restraining order and preliminary injunctive relief on April 24, 1985, and on April 25, 1985, the court conducted a hearing, and denied plaintiff's application for a temporary restraining order. By order of April 26, 1985, the court directed that the trial of the action on the merits be advanced and. consolidated with the hearing of the application for a preliminary injunction pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. On May 9, 1985, the cause was heard.

Both parties have agreed that the record reflects no genuine issue of material fact and that there can be no such issue. Plaintiff Morris R. Steenson served continuously on active duty with the United States Army for a period of 16 years, 11 months, and 25

days, beginning October 9, 1960.[1] On October 3, 1977, plaintiff was relieved from active duty, and he subsequently received readjustment pay. By later performing periods of active duty for training (ADT) in the United States Army Reserve since his release, plaintiff has accrued more than 18 years of active federal service. As a result, plaintiff argues that he is protected by the following statute from being released from his current ADT tour of duty:

Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system,[2] may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

10 U.S.C. § 1163(d). (footnote added).

■ Defendants initially assert that plaintiff has failed to exhaust available administrative remedies because he did not first seek relief with the Army Board for Correction of Military Records (ABCMR). *See* 10 U.S.C. § 1552, 32 C.F.R. § 581.3.

The Supreme Court has identified the purposes of the exhaustion doctrine: (1) avoidance of premature interruption of the administrative process, (2) provision for the agency to apply its expertise and to develop a record, and (3) maintenance of judicial efficiency by elimination of many complaints as may be through the administrative process prior to judicial review. *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969).

Plaintiff argues that the instant case falls within an exception to the exhaustion doctrine. *See Seepe v. Department of the Navy,* 518 F.2d 760, 762. He submits that

the question before the court is one of statutory construction, that there is no uncertainty about the facts, and that resort to the appropriate administrative agency would be futile.

"[M]ilitary personnel with grievances against the military establishment or its personnel must exhaust the administrative remedies provided by the military service before seeking relief in civilian courts." *Penagaricano v. Llenza,* 747 F.2d 55, 61 (1st Cir.1984); *see also, Linfors v. United States,* 673 F.2d 332 (11th Cir.1982). As noted by several courts, where the gravamen of the complaint is that the service did not follow its regulations in arriving at the contested decision

whether this is viewed as a legal or a factual question, the Army ought to be the primary authority for the interpretation of its own regulations. A decision by the ABCMR that the Army should have followed [the regulation at issue] might completely obviate the need for judicial review. If on the other hand, the ABCMR concludes that [the regulation at issue] is inapplicable to the facts of this case and [the plaintiff serviceman] then seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body in the Army's own appellate system. *See Nelson v. Miller,* 3 Cir., 373 F.2d 474, 480, *cert. denied,* 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980; *Sohm v. Fowler,* 1966, 124 U.S.App.D.C. 382, 365 F.2d 915, 918–919.

*Navas v. Vales,* 752 F.2d 765, 770–71 (1st Cir.1985) quoting *Hodges v. Callaway,* 499 F.2d 417, 422 (5th Cir.1974).

Plaintiff argues that appeal to the ABCMR would be an exercise in futility because the Army has already made its

---

1. At least there is no dispute that all of such time can be considered as continuous active duty.

2. There are two separate systems governing military retirement for officers. For an officer who has spent his entire career on active duty,

10 U.S.C. § 3911 provides that the Secretary of the Army may retire him after 20 years of service. For those who serve in the Army Reserve, 10 U.S.C. §§ 1331–1336 provides that they may be retired at age 60.

position clear on 10 U.S.C. § 1163(d). However, as the *Hodges* court noted:

> Hodges would synonomize pessimism with futility, but courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protection vouchsafed by the Constitution, by the statute and by its own regulations.

499 F.2d at 424. Further, plaintiff is not alleging that the administrative system itself is unlawful, unconstitutional, or incapable of redressing his injury. *See Porter v. Schweiker*, 692 F.2d 740, 742–44 (11th Cir. 1982).

Courts are generally loath to interfere in military affairs because of concerns for efficiency and agency expertise. *Sanders v. McGrady*, 537 F.2d 1199, 1201 (4th Cir. 1976). Hence, because of the foregoing, the court finds that plaintiff's failure to exhaust his administrative remedies is fatal to his claim.[3]

 Defendant additionally urges that *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) requires the conclusion that this action is non-reviewable.[4] The *Mindes* court adopted a test for determining the reviewability of military matters:

> [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.

*Id.* at 201. Secondly, even if the above analysis is satisfied, a court may still deny review. The court must examine and balance the following four factors to determine whether, as a policy matter, review of the military decision in question is proper:

(1) the nature and strength of the plaintiff's challenge to the military decision...

(2) the potential injury to the plaintiff if review is refused...

(3) the type and degree of anticipated interference with the military function ... [and]

(4) the extent to which the exercise of military expertise or discretion is involved.

*Id.* at 201. A balancing of these factors does not dictate that the court now review the decision. The defendant has admitted to the court that if relief is ultimately granted to plaintiff, the relief can be full relief. For reasons hereinafter stated, the strength of plaintiff's challenge is highly questionable. The interference with the military function at this stage would outweigh the effect of requiring exhaustion of available corrective measures.

Assuming that the court has jurisdiction to consider defendant's motion to dismiss or to decide the case on the evidence, the court adopts the reasoning of *Adams v. United States*, No. KC–3729 (D. Kan. August 23, 1973) in holding that rules of statutory construction, the legislative history of 10 U.S.C. § 1163(d) and past administrative interpretation of the statute establish that plaintiff has not stated or proved a meritorious claim.[5]

The defendants have also submitted declarations by Army personnel as well as copies of opinions of the Administrative Law Division, Office of the Judge Advocate General of the Army, in an effort to show that the Army's interpretation of the status in question is consistent with the *Adams* case.

Further, in examining the statutory history of 10 U.S.C. § 1163(d), the court finds that § 1163(d) was originally enacted as part of the Act of July 9, 1956, Pub.L. No. 676, 70 Stat. 517, 518, which added § 265(d)

---

3. An apparent reason for requiring exhaustion is to have the appropriate agency consider the effect, if any, of the July 26, 1984 interim charge No. 107 affecting AR 635–100, 19 Feb. 1969.

4. The "exhaustion" and "non-reviewable" standards may be so closely related as to have meshed.

5. The opinion in that case is appended to this one.

to the Armed Forces Reserve Act of 1952. *Id.* The Armed Forces Reserve Act of 1952, Pub.L. No. 476, 66 Stat. 481, defined "active duty" as "full-time duty in the active military service of the United States, other than active duty for training." *Id.* § 101(b). Thus, as originally enacted, the provisions of § 1163(d) were expressly inapplicable to active duty for training. In August 1956, Congress codified Title 10, adding the present definition of active duty found at § 101(22), which includes active duty for training. Section 1163(d) was codified in Title 10 in 1962. Act of September 7, 1962, Pub.L. No. 87–651, 76 Stat. 506–508.

In *Cass v. United States,* 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974), the Supreme Court examined the committee reports accompanying the codification proposal in construing another section of the subject Act. The Court held that the congressional comments, combined with the fact that the consideration of any change in eligibility standards appears in the committee reports or other proceedings, demonstrate that Congress did not intend to increase eligibility under the statute. "[T]he meaning of the predecessor statute is clear and quite different from the meaning petitioners would ascribe to the codified law; and the revisers expressly stated that changes in language resulting from the codification were to have no substantive effect." *Id.* at 82, 94 S.Ct. at 2172 (citations omitted).

A judgment in accordance with this memorandum opinion will be entered contemporaneously herewith.

## FINAL JUDGMENT

In accordance with a Memorandum Opinion filed contemporaneously herewith, this cause is DISMISSED without prejudice, for the following alternative reasons in the order listed.

1. First Alternative Reason. For failure to exhaust administrative remedies.

2. Second Alternative Reason. The claim is non-reviewable as provided by *Mindes.*

3. Third Alternative Reason. The motion to dismiss is due to be granted because no claim is stated on which relief can be granted.

4. Fourth Alternative Reason. The plaintiff is not entitled to prevail on the merits based on the evidence at the trial. If an appeal is taken and if it is determined, on appeal, that either the Third or Fourth Alternatives is appropriate, the dismissal is with prejudice.

Costs are assessed against the plaintiff.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

LT. COL. LLOYD K. ADAMS and MAJOR VINCENTE DeJESUS, Student Detachment, US Army Command and General Staff College, Fort Leavenworth, Kansas 66027, Plaintiffs,

v.

THE UNITED STATES OF AMERICA; SECRETARY OF THE ARMY; COMMANDING GENERAL, US ARMY RESERVE COMPONENT, PERSONNEL AND ADMINISTRATION CENTER, ST. LOUIS, MISSOURI 63132; COMMANDANT, US ARMY COMMAND AND GENERAL STAFF COLLEGE, MAJOR GENERAL HENNESSEY, Fort Leavenworth, Kansas 66027, Defendants.

Civil Action No. KC–3729

Aug. 23, 1973

### MEMORANDUM AND ORDER

This is an action initiated by two United States Army Reserve Officers who were attending the Command and General Staff College at Fort Leavenworth, Kansas, at the time the suit was filed. They seek to enjoin defendants from relieving them from active duty in face of their requests for retention.

A temporary restraining order was issued on May 15, 1973, and has been extended pending outcome of this action. At the preliminary injunction hearing on May 25, 1973, the parties agreed there were no disputed facts. Accordingly, defendants moved to dismiss the complaint, or in the alternative for summary judgment. Plaintiffs have also requested summary judgment. Briefs have been submitted in support of the parties' respective contentions.

Two questions are presented for our determination:

1. Have plaintiffs stated grounds sufficient to invoke the jurisdiction of this court?

2. May an army reserve officer ordered to "active duty for training" for a four-month period "tack" such time on to previous periods of active duty and thus bring him within the protective provisions of 10 U.S.C. § 1163(d)?

We shall first review the chronology of events leading up to this controversy.

*Plaintiff Lloyd K. Adams.* Adams served on active duty from July 18, 1954, until released on June 29, 1972, under the provisions of paragraph 3–58(a) of AR 635–100. As required by the regulation, his records were screened at Headquarters, United States Army, "to determine those officers whose degree of efficiency and manner of performance require relief from active duty or elimination from the service."

On September 8, 1972, Adams applied to the United States Army Reserve Components Personnel and Administration Center, for Active Duty for Training for a period of 130 days to attend CLASS 4 of the Command and General Staff Officer Course at Ft. Leavenworth, Kansas, beginning on or about January 8, 1973. He was accepted for the course and was ordered to active duty upon self-executing orders for the duration of the course, a period of 131 days ending on May 18, 1973. (Both plaintiffs question whether or not they made a "request" or were "selected" for the school, relying on AR 351–16.) Adams would have been automatically released from active duty for training without further action upon the expiration of his orders on May 18, 1973, except for the Temporary Restraining Order entered by this court on May 15, 1973.

*Plaintiff Vincente DeJesus.* Major DeJesus served on active duty from May 30, 1950 to June 4, 1953, and thereafter from September 2, 1957 through May 15, 1972, when he was released from active duty under the provisions of paragraph 3–58a, AR 635–100 (see above).

On September 10, 1972, he applied for Active Duty for Training to attend the Command and General Staff Officer Course at Ft. Leavenworth, Kansas, beginning on or about January 8, 1973. He was accepted and self-executing orders were issued ordering him to active duty for the duration of the course, a period of 131 days ending on May 18, 1973.

Like plaintiff Adams, he would have been automatically released from active duty for training without further action upon the expiration of his orders on May 18, 1973, except for the Temporary Restraining Order entered by this court.

Prior to the filing of this action, each of the plaintiffs made application for retention on active duty under the provisions of 10 U.S.C. § 1163(d). It has been stipulated that their requests for retention have in fact been denied by the Department of the Army.

## CONCLUSIONS OF LAW

### I

We turn first to the jurisdictional question. While the complaint lacks specific allegations of the "grounds upon which the court's jurisdiction depends," it definitely appears that a question arising under specific federal statutes is involved. In addition to a federal question being raised, 28 U.S.C. § 1331 also requires that the matter in controversy exceed the sum or value of $10,000. Although no allegation of a jurisdictional amount is made in the complaint, we are satisfied that this deficiency may be

cured by amendment. In the interests of judicial economy, we shall consider the complaint amended to state the requisite jurisdictional grounds under § 1331. Accordingly, defendants' motion to dismiss is denied.

## II

Section 1163(d) of Title 10, United States Code, provides that:

"(d) Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary."

Admittedly, neither of the plaintiffs would be entitled to the sanctuary accorded by Section 1163(d) without the four months of active duty for training at the Command and General Staff School being tacked on to their previous terms of active duty service. The answer to whether or not plaintiffs come within the purview of the statute is found in (1) the legislative history and intent of the statute, and (2) the construction given the statute by the agency charged with its administration.

In 1956 Congress provided lump sum readjustment payments for members of reserve components who were involuntarily released before they were eligible for retirement benefits (Public Law 676 July 9, 1956, 84th Cong.; 70 Stat. 517), in order to guarantee to the reservist that if he remains on active duty for a number of years and is then involuntarily released, he will be assured some percentage of economic security during his readjustment to civilian Life. H.R.Rep. No. 1960, 84th Cong.2d Sess., 2 (1956). The purpose of the original act was to grant readjustment pay to reserve officers who were serving on extended active duty in a career status and were separate involuntarily, thus bringing about a parity between involuntarily released Regular and Reserve Officers. (Hearings before the Senate Committee on Armed Service on H.R. 9952, 84th Cong., 2d Sess., p. 6; Hearings before the House Committee on Armed Services on H.R. 9952, 84th Cong.2d Sess., p. 698).

In enacting the readjustment pay legislation, Congress also recognized that reservists within two years of qualifying for retirement benefits should be protected from involuntary release, and enacted what is now § 1063(d) [§ 1163(d)], the "sanctuary" provision. In the 1962 recodification of Title 10, United States Code, the "sanctuary" provision was detached from the readjustment pay statute (now codified at 10 U.S.C. 687) and put under 10 U.S. 1163, dealing with limitations on the power to separate members of reserve components.

A cardinal rule of statutory construction is that meaning should be given to every provision of a Statute. *Parker v. United States*, 448 F.2d 793 (10th Cir.1971), *cert. den.* 405 U.S. 989 [92 S.Ct. 1252, 31 L.Ed.2d 455] (1972). When effect is given to both 10 U.S.C. 1163(d) and 10 U.S.C. 687, it is clear to us that the intent of Congress was that "active duty for training" purposes may not be tacked upon previous terms of active duty, thereby enabling a reservist to bootstrap himself into the sanctuary afforded by 10 U.S.C. 1163(d).

The readjustment pay statute (10 U.S.C. § 687) and the sanctuary provision of 10 U.S.C. § 1163(d) were enacted at the same time. We believe they are *in pari materia* and therefore must be construed together. By these statutes Congress established two-fold protection for reserve officers involuntarily released from active duty before the expiration of twenty years service. If an officer was released after five years but before eighteen years service, he was entitled to readjustment pay. If he had served for eighteen years but less than twenty years, he had the "sanctuary" of 10 U.S.C. § 1163(d) unless the Secretary expressly approved his release.

Parenthetically, we note that plaintiffs have received readjustment pay upon their

prior release from active duty after more than seventeen years active federal service.

The purpose of the readjustment pay legislation is succinctly stated as follows:

"[this legislation is to provide for] a man who has served in the service for a relatively long period, a man who intended to make a career out of the military service and suddenly finds himself separated through no fault of his own, or beyond his control, having to re-establish himself in civilian pursuits and having a difficult time doing it." (Hearings before the Senate Committee on Armed Services on H.R. 9952, 84th Cong., 2d Sess., p. 6.)

By the express provisions of 10 U.S.C. § 687(b)(2) reserve officers involuntarily released from "active duty for training" are not entitled to readjustment pay benefits. This is also made abundantly clear by the following colloquy when the bill was presented on the floor of the House:

"Mr. Gross: I think the Committee has inserted a number of very good provisions on page 2 of the Bill. But, I should like to ask the gentleman what is meant by a person who is released from active duty for training. What kind of training?

Mr. Vanzandt: A reserve officer who is called up for training purposes may find himself on active duty for a period of months, weeks or days, so we differentiate between an officer who is on active duty a longer period of time—anywhere from five (5) years to less than eighteen (18) years—and the reserve officer who is called up only for training purposes.

Mr. Brooks of Louisiana: Mr. Chairman, if the gentlemen will yield, the six-month trainee under the reserve program would be one of the men included, and the National Guard sometimes sends its officers to the regular establishment for training purposes only.

Mr. Gross: But this is confined to a military trainee

Mr. Vanzandt: This is confined to active duty by a reserve officer but does not include a reserve officer called up only

for training." 102 Congressional Record at 10119 and 10120 (June 12, 1956).

Construing the readjustment pay statute with § 1163(d) and keeping in mind the purpose of this legislation, we are satisfied that Congress never intended that a reserve officer who had already been involuntarily released and received readjustment pay could then "tack on" active duty for training time and become qualified for the "sanctuary" afforded by § 1163(d). Plaintiffs, as career officers, have already had the benefits of readjustment pay for having been separated through no fault of their own prior to eighteen years of active duty. In our view, they have been accorded the only benefits Congress intended by this legislation. Furthermore, we have not overlooked plaintiffs' contention that "active duty" as defined by 10 U.S.C. § 101(22) includes "active duty for training," thereby bringing them within the ambit of the "sanctuary" provision. This argument is overridden by the legislative history of 10 U.S.C. § 687 and § 1163(d).

In reaching the conclusion that plaintiffs are not entitled to the benefits of § 1163(d), we are also persuaded by the long standing interpretation given this statute by the Department of the Army. It is a well-settled rule of statutory construction that the construction given a statute by the agency charged with its administration "should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 23 L.Ed.2d 371, 89 S.Ct. 1794 (1969); *CIR v. First Security Bank of Utah*, 405 U.S. 394, 92 S.Ct. 1085 [31 L.Ed.2d 318] (1972); and *Ute Indian Tribe of the Uintah & Ourqy Reservation v. Probst*, 428 F.2d 491 (10th Cir.1970). An administrative interpretation should be accepted by the courts if it be a reasonable one, even though there might be another interpretation which was itself reasonable. *Udall v. Tallman*, 380 U.S. 1 [85 S.Ct. 792] 11 L.Ed.2d 980 (1965); and *Unemployment Comm'n v. Aragon*, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946).

The temporary restraining order issued May 15, 1973, is dissolved and defendants' motion for summary judgment is sustained.

IT IS SO ORDERED.

Dated this 23rd day of August, 1973, at Kansas City, Kansas.

/s/ Earl E. O'Connor
UNITED STATES DISTRICT JUDGE