RE, Chief Judge.
 

 Lieutenant Colonel (LTC.) Oliver Donovan Ulmet, appeals from a judgment of the United States Claims Court which granted defendant’s motion for summary judgment, and denied his cross-motion for summary judgment. The Claims Court held that LTC. Ulmet, a reserve officer who had been involuntarily released after 15 years of service, and who had received readjustment pay, could not “tack on” his subsequent active duty for training service in order to become eligible for the “sanctuary provision” of 10 U.S.C. § 1163(d).
 

 The question presented on this appeal is whether a United States Army Reserve officer can apply time served on active duty for training tours in computing the total amount of active service time required for sanctuary under 10 U.S.C. § 1163(d), and retirement under 10 U.S.C. § 3911.
 

 Since the court holds that time served on active duty for training is active service within the active service time required for the sanctuary provision of 10 U.S.C. § 1163(d), and the 20-year retirement provision of 10 U.S.C. § 3911, the decision of the Claims Court is reversed, and LTC. Ulmet is entitled to sanctuary under the terms of the statutory provision.
 

 LTC. Ulmet seeks reinstatement to active duty, and maintains that, pursuant to 10 U.S.C. § 1163(d), he should be retained on active duty for another 2 years, in order to qualify for retirement under 10 U.S.C. § 3911. It is his contention that the “plain meaning” of “active duty,” as defined in 10 U.S.C. § 101(22), requires that the time that he served on “active duty for training” be included in the computation of his active service for retirement purposes, and that 10 U.S.C. § 3926(a)(1) is dispositive of this case. The inclusion of the “active duty for training time” would allow LTC. Ulmet to invoke the sanctuary provision, 10 U.S.C. § 1163(d), since he would have accumulated over 18 years of active service time.
 

 The defendant contends that the Claims Court properly refused to “tack” LTC. Ul-met’s active duty for training time to his previous active service. Defendant argues that when the sanctuary provision was enacted, “active duty for training” was specifically excluded from the definition of “active duty.” Armed Forces Reserve Act of 1952, Pub.L. No. 476, § 101(b), 66 Stat. 481. The present definition of “active duty,” which expressly includes active duty for training, became part of the statute in 1956 when Title 10 was revised and codified. Notwithstanding the present definition of “active duty,” defendant asserts that the codification of Title 10 in 1956 was not intended to make any substantive change in the law, and, thus, the time served on active duty for training should not count towards the time needed for sanctuary under section 1163(d).
 

 The defendant also contends that LTC. Ulmet fails to qualify for the protection of section 1163(d) because his time was not served continuously. Alternatively, defendant submits that the readjustment pay received by LTC. Ulmet served as an alternative to the retirement benefits of 10 U.S.C. § 3911. Finally, the defendant contends that even if this court were to “tack on” LTC. Ulmet’s service while on active duty for training, he would still fall short, by 8 days, of the 18 years required for sanctuary.
 

 BACKGROUND
 

 On June 6, 1958, Oliver Donovan Ulmet joined the United States Army as an enlisted soldier, and in 1966 was appointed a Reserve commissioned officer of the Army. On September 12, 1973, after serving in Vietnam, as part of a reduction in the number of military personnel following the cessation of hostilities in Southeast Asia, he was involuntarily released from active duty. He had attained the rank of Captain, and had accrued 15 years, 3 months, and 7
 
 *1082
 
 days of active service. In order to facilitate his transition to civilian life, he received $15,000 of readjustment pay pursuant to 10 U.S.C. § 687 (1970) (repealed 1981).
 

 From 1973 to 1985, Ulmet continued to serve in the Army Reserve, and participated in 15 periods of what was classified by the Army as active duty for training. During these periods, which ranged in duration from 2 days to over 1 year, he became skilled as a Training Requirements Analysis System manager. He attained the rank of Lieutenant Colonel, and amassed over 18 years of active service.
 

 On September 7, 1983, contending that he had completed over 18 years of active service, LTC. Ulmet requested that he be retained on active duty, and allowed to complete 20 years of service necessary for retirement. The Army denied LTC. Ul-met’s request and released him from active duty on September 31, 1983. Subsequently, while on another active duty tour in April 1985, LTC. Ulmet requested assignment to various extended tours. These requests were also denied.
 

 In this action in the United States Claims Court, LTC. Ulmet sought back pay, reinstatement to active duty status, and active duty credit for retirement from September 31, 1983. Holding that a reservist was not entitled to include periods served on active duty for training for the time required for the sanctuary provision, 10 U.S.C. § 1163(d), the Claims Court granted defendant’s motion for summary judgment.
 
 Ulmet v. United States,
 
 10 Cl.Ct. 522, 525 (1986).
 

 DISCUSSION
 

 To determine the questions presented the court must interpret Title 10 U.S.C., and the meaning of “active duty.” It is axiomatic that “the starting point for interpreting a statute is the language of the statute itself,” and that, “absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.”
 
 Consumer Product Safety Comm’n v. GTE Sylvania, Inc.,
 
 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980);
 
 see also Institut Pasteur v. United States,
 
 814 F.2d 624, 626-27 (Fed.Cir.1987).
 

 Section 1163(d) of Title 10 U.S.C., commonly referred to as the “sanctuary provision,” in part, states that:
 

 [A] member of a reserve component who is on active duty and is within two years of becoming eligible for retired or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.
 

 10 U.S.C. § 1163(d) (1982). By its express language, the benefits of section 1163(d), the sanctuary provision, inure to a member of a reserve component who is on active duty, and “within two years of becoming eligible for retired or retainer pay under a purely military retirement system.”
 

 Section 3911 of Title 10 U.S.C. sets forth the retirement system for regular or reserve commissioned officers:
 

 The Secretary of the Army may, upon the officer’s request, retire a regular or reserve commissioned officer of the Army who has at least 20 years of service computed under section 3926 of this title, at least 10 years of which have been active service as a commissioned officer.
 

 10 U.S.C. § 3911 (1982).
 

 It would appear clear, therefore, that for LTC. Ulmet to be eligible for sanctuary, he had to be within 2 years of the 20-year retirement requirement. Differently stated, his eligibility for sanctuary depended upon the completion of 18 years of service, as computed under section 3926.
 

 Section 3926(a)(1), in pertinent part, provides that:
 

 (a) For the purpose of determining whether an officer of the Army may be retired under section 3911 ... his years of service are computed by adding—
 

 (1) all active service performed as a member of the Army____
 

 10 U.S.C. § 3926(a) (1982).
 

 Section 3926(a)(1) leaves no doubt that, for retirement purposes under section 3911, an officer’s years of service are determined
 
 *1083
 
 by adding “all active service performed.” Section 101, which sets forth the definitions applicable to Title 10, defines “active service” as simply “service on active duty.” 10 U.S.C. § 101(24) (1982). Section 101 also specifically defines “active duty” as follows:
 

 “Active duty” means full-time duty in the active military service of the United States. It includes full-time training duty, [and] annual training duty____
 

 10 U.S.C. § 101(22) (1982).
 

 In this case, therefore, by the express language of these statutory provisions, if LTC. Ulmet has accumulated 18 years of active service, that is, “active duty,” then he is eligible for “sanctuary” under 10 U.S.C. § 1163(d). Any question as to what is included within the meaning of “active duty” is explicitly resolved by the statutory definition which specifically includes “full-time training duty.” A careful reading of these governing statutory provisions leaves no doubt that the active duty training tours of LTC. Ulmet are to be included in determining the 20 years of service required for retirement under 10 U.S.C. § 3911.
 

 LEGISLATIVE HISTORY
 

 Notwithstanding the explicit language of the quoted statutory provisions, the defendant contends that, in order to ascertain the meaning of the term “active duty,” reference must be made to the legislative history of section 1163(d) because “[t]here is clearly a dispute as to the proper construction of the statutory language and the intent of Congress.” More specifically, the defendant submits that the Court must examine the legislative history of section 1163(d) “because the language of section 1163(d) should only be construed in the terms in which it was enacted, not as it was codified.”
 

 The legislative history relied upon by the defendant consists of certain committee hearings and floor debates.
 
 E.g. Hearings Before the House Comm, on Armed Services on H.R. 9952,
 
 84th Cong., 2d Sess. 6981 (1956);
 
 Hearings Before the Senate Comm, on Armed Services on H.R. 9952,
 
 84th Cong.2d Sess. 2 (1956); 102 Cong.Rec. H 10,119 (June 12, 1956). Although the court may consider these legislative materials as evidence of congressional intent, it should be noted that, in interpreting statutes, courts should be “extremely wary of testimony before committee hearings and debates on the floor of Congress save for precise analyses of statutory phrases by the sponsors of the proposed laws.”
 
 S & E Contracts, Inc. v. United States,
 
 406 U.S. 1, 13 n. 9, 92 S.Ct. 1411, 1418-19 n. 9, 31 L.Ed.2d 658 (1972).
 

 The sanctuary provision was originally enacted as part of the legislation which added section 265 to the Armed Forces Reserve Act of 1952. Act of July 9, 1956, Pub.L. No. 676, § 265, 70 Stat. 517, 518. The title to the Act stated that its purpose was “[t]o provide a lump-sum readjustment payment for members of the reserve components who are involuntarily released from active duty.” 70 Stat. at 517. Section 265, in part, provided that:
 

 Sec. 265. (a)
 
 A member of a reserve component who is involuntarily released from active duty after
 
 the enactment of this section and after
 
 having completed
 
 immediately prior to such release
 
 at least five years of continuous active duty,
 
 except for breaks in service of not more than thirty days, as either an officer, warrant officer, or enlisted person,
 
 is entitled to a lump-sum readjustment payment
 
 computed on the basis of one-half of one month’s basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the eighteenth year____
 

 (b) The following persons are not entitled to any payments under this section:
 

 (2) A person who is released from active duty for training.
 

 (c) The acceptance of readjustment pay under this section shall not deprive a person of any retired pay, retirement pay, retainer pay, or other retirement benefits from the United States to which he would otherwise become entitled.
 

 
 *1084
 
 (d) Under regulations prescribed by the appropriate Secretary, which regulations shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of qualifying for retired pay, retirement pay, or retainer pay under any purely military retirement system, shall not be involuntarily separated from that duty before he qualifies for that pay unless his separation is approved by the appropriate Secretary.
 

 Id.
 
 (emphasis added).
 

 Defendant asserts that the Court must examine the language of section 1163(d) “in the terms in which it was enacted, not as it was codified.” Hence, defendant contends that, in order to ascertain the meaning of section 1163(d), the Court must use the definitions that were applicable when section 265 was enacted. At the time of the enactment of section 265, active duty was defined as “full-time duty in the active military service of the United States, other than active duty for training.” Armed Forces Reserve Act of 1952, Pub.L. No. 476, § 101(b), 66 Stat. 481. In August 1956, Congress codified Title 10, at which time it added the present definition of active duty, which includes active duty for training.
 
 See
 
 Act of Aug. 10, 1956, Pub.L. No. 1028, § 101(22), 70A Stat. 1, 5 (1956) (codified at 10 U.S.C. § 101(22) (1982)). Section 1163(d), however, was not added to Title 10 until 1962.
 
 See
 
 Act of Sept. 7, 1962, Pub.L. No. 87-651, § 106, 76 Stat. 508. Defendant maintains, however, that, in the 1956 amendments, Congress did not intend to make any change in the substantive law.
 
 See Cass v. United States,
 
 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974).
 

 The court does not agree with the defendant’s contention as to the interpretation of the applicable statutory provisions. Nothing in the legislative history evidences a clear legislative intent as to the statutory provisions at issue. The cited hearings focus on readjustment pay, and do not speak to either the definition of active duty or sanctuary. In interpreting the meaning of statutory words and phrases, the court must refer to the definitions specifically provided in the statute itself. Although, in cases of doubt, prior definitions may be helpful in determining congressional intent, they cannot replace the definitions set forth or codified in the present statute. Hence, in this case, in interpreting section 1163(d), the court must read the present definition of “active duty,” which expressly includes active duty for training.
 

 Defendant also contends that “the act by its terms applies only to those serving ‘continuous active duty,’ with breaks in service for 30 days or less.” In support of this interpretation, defendant makes reference to a colloquy on the floor of the House just prior to the act’s passage, as well as to a statement made by Congressman Brooks at the hearings on the bill.
 

 The defendant, however, has incorrectly analyzed section 265 of the Armed Forces Reserve Act of 1952 and its legislative history. It assumes that a statement which pertained to a subsection of section 265 was meant to refer to the entire section. The express language of section 265 clearly refutes the defendant’s interpretation.
 

 The “continuous active duty” language appears only in section 265(a), which sets forth the eligibility requirements for readjustment pay. Nowhere in the statutory scheme or legislative history is there any indication that the requirement of “continuous active duty” has any relevance to section 265(d), the sanctuary provision. The 1962 enactment of the readjustment pay provision clarifies this by stating that the requirement of continuous active duty is for the “purposes of
 
 this subsection,”
 
 which pertains to readjustment pay. Hence, the fact that Ulmet did not serve “continuous active duty,” does not bar him from entitlement to sanctuary.
 

 .The defendant also claims that section 265(b) explicitly excludes reservists released from active duty for training from entitlement to “any payment ‘under this section.’ ” The language of section 265(b), however, only refers to
 
 “payments
 
 under this section,” that is, readjustment payments. Section 265(d), the sanctuary provision, does not provide for any “payments,”
 
 *1085
 
 but instead refers to length of service, and protects a “member of a reserve component” who is within 2 years of retirement from being involuntarily separated from active duty unless that “separation is approved by the appropriate Secretary.”
 

 The defendant’s reliance on a colloquy, prior to the Act’s passage, is misplaced. In its brief, the defendant quotes Congressman Van Zandt as saying: “This [act] is confined to active duty by a Reserve officer but does not include a Reserve officer called up only for training.”
 

 A reading of the colloquy reveals that Congressman Van Zandt’s statement was in response to a question asked by Congressmen Gross and Brooks as to the eligibility of certain reservists on training duty for
 
 readjustment pay. See
 
 102 Cong.Rec. H 10,120 (June 12, 1956). Congressman Van Zandt’s answer that
 
 “[t]his
 
 is confined to active duty by a Reserve officer” did not refer to the entire act, as defendant suggests by its insertion of the bracketed word “act,” rather, it referred to the specific requirement for readjustment pay in subdivision (a) of section 265. A reading of the entire colloquy leaves no doubt that it focused upon the provisions that dealt with lump-sum readjustment pay for reserve officers. Indeed, little was said as to the sanctuary provision.
 
 See id.
 
 at 10,116-20. The defendant is also incorrect in its reference to Congressman Brooks’ statement at the congressional hearings, because it is clear that he was referring to the concept of lump-sum readjustment pay for reserve officers, and not the sanctuary provision.
 

 The defendant also submits that readjustment pay and retirement are mutually exclusive statutory benefits. Specifically, defendant contends that the legislative history of section 1163(d) “requires the inescapable conclusion that the readjustment pay of $15,000 that LTC. Ulmet received at the end of his continuous active duty was an alternative benefit to the protection of section 1163(d).” According to the defendant, if a reserve officer obtains readjustment pay, that officer is ineligible for sanctuary under section 1163(d), or retirement under 10. U.S.C. § 3911. The defendant contends that the availability of retirement benefits under 10 U.S.C. §§ 1161-1336 for “non-regular service” supports the conclusion that readjustment pay and sanctuary are mutually exclusive benefits.
 

 The court does not agree that the legislative history of section 1163(d) requires an interpretation that the acceptance of readjustment pay deprives an officer of retirement benefits to which the officer may be entitled at some later period. Indeed, section 265(c) expressly provided that:
 

 (c) The acceptance of readjustment pay under this section shall not deprive a person of any retired pay, retirement pay, retainer pay, or other retirement benefits from the United States to which he would otherwise become entitled.
 

 Act of July 9, 1956, Pub.L. No. 656, § 265(c), 70 Stat. 518. The 1962 amendments to the Act contained a similar provision, which stated: “A member’s acceptance of a readjustment payment under this section does not affect his entitlement to ... retirement benefits from the United States.” Act of Sept. 7, 1962, Pub.L. No. 87-651, § 102(a), 76 Stat. 507, 508 (amended 1966). The legislative history shows clearly that Congress considered the situation of a person who collected readjustment pay, and who later becomes qualified for retirement benefits.
 
 See
 
 S.Rep. No. 2288, 84th Cong., 2d Sess.,
 
 reprinted in
 
 1956
 
 U.S. Code Cong. & Admin.News
 
 3061, 3066, 3069. Moreover, the current statute which governs separation pay upon involuntary release from active duty, prevents a double retirement benefit for persons who accept readjustment pay, and who later become qualified for regular retirement benefits, by requiring a deduction from each retirement payment until the total amount deducted equals the readjustment pay received.
 
 See
 
 10 U.S.C. § 1174(h)(1).
 

 In sum, after a careful review of the legislative history of section 1163(d), the court concludes that it does not show “a clearly expressed legislative intention” contrary to the express language of the statute.
 

 
 *1086
 
 PRIOR ADMINISTRATIVE AND JUDICIAL CONSTRUCTION
 

 The defendant relies on prior administrative and judicial construction of section 1163(d) to support its interpretation of the sanctuary provision. It contends that the administrative interpretation of 10 U.S.C. § 1163(d) “supports the view that the action does not provide protection to officers such as plaintiff.” The defendant states that the “Judge Advocate General has consistently held that section 1163(d) does not apply to Reservists,” and contends that “all the case law on the precise issue supports the Army’s interpretation.”
 

 It is true that a court must accord due weight to an agency’s interpretation of a statute it administers.
 
 See Zenith Radio Corp. v. United States,
 
 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978);
 
 American Lamb Co. v. United States,
 
 785 F.2d 994, 1001 (Fed.Cir.1986). It is equally true that “a court may reject an agency interpretation that contravenes clearly discernible legislative intent.”
 
 American Lamb Co.,
 
 785 F.2d. at 1001. In essence, the issue is whether the agency’s interpretation “is based on a permissible construction of the statute.”
 
 Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.,
 
 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).
 

 It is conceded that the Army’s interpretation of section 1163(d) has consistently denied officers in LTC. Ulmet’s position the benefits of sanctuary. In this case, however, the court has concluded that the defendant’s application of 10 U.S.C. § 1163(d) is based on an impermissible interpretation of the express language of the governing statute. The same may be said of the prior judicial interpretations of the sanctuary provision.
 

 As noted by the defendant in its brief, only two district courts have considered the question whether a reserve officer can “tack on” time served on active duty for training in order to qualify for the sanctuary provision.
 
 See Steenson v. Marsh,
 
 609 F.Supp. 800 (N.D.Ala.1985);
 
 Adams v. United States,
 
 Civ. Action No. K.C-3729 (D.Kan. Aug. 23, 1973) (published as an appendix to
 
 Steenson v. Marsh,
 
 609 F.Supp. at 803). In both cases, reserve officers who had served extended continuous tours of duty, and who had received readjustment pay, sought the benefit and protection of the sanctuary provision while they were on active duty for training.
 

 In
 
 Steenson,
 
 the court held that the plaintiff’s action was barred for lack of jurisdiction because of his failure to exhaust his administrative remedies. 609 F.Supp at 801. The court added, in dicta, that even if it were to have had jurisdiction over the action, the plaintiff would not be entitled to the protections of the sanctuary provision because active duty for training could not be counted in the computation of time required to qualify for sanctuary. For this dicta, the court adopted the reasoning of
 
 Adams v. United States,
 
 and relied on past administrative interpretation of 10 U.S.C. § 1163(d).
 
 Id.
 
 at 802-03.
 

 In the
 
 Adams
 
 case, the district court held that two reserve officers on active duty for training tours were not eligible for sanctuary since their training time could not be “tacked on” to their previous active duty in order to qualify them for the protection of 10 U.S.C. § 1163(d). The court reasoned that because the sanctuary provision and the readjustment pay statute were enacted together, they were
 
 in pari mate-ria
 
 and to be construed together. The court observed that the readjustment pay statute and its legislative history expressly excluded reserve officers released from active duty for training. Thus, the court concluded that “Congress never intended that a reserve officer who had already been involuntarily released and received readjustment pay could then ‘tack on’ active duty for training time and become qualified for the ‘sanctuary’ afforded by § 1163(d).”
 
 Id.
 
 at 806. Moreover, although the court noted that the statutory definition of “active duty” included “active duty for training,” it concluded that the legislative history of the readjustment pay statute overrode any argument based on the express statutory definition. Finally, the court stated that it was also persuaded by the Army’s “long standing interpretation” of section 1163(d).
 
 Id.
 

 These district court decisions, however, are based upon the same flawed
 
 *1087
 
 analysis of the statute relied upon by the defendant. Both of these decisions failed to give sufficient consideration to the express language of Title 10. For the courts to ignore the express language of a statute, the legislative intent to the contrary must be clear. The reliance by the district courts on the legislative history of the readjustment pay statute, which said little as to the requirements of the sanctuary provision, was misplaced.
 

 In addition, the
 
 Adams
 
 court’s interpretation that the provisions for readjustment pay and sanctuary “are
 
 in pari materia
 
 and therefore must be construed together” fails to consider the language of these separate provisions. Although the provisions for readjustment pay and sanctuary were enacted together in 1956 as part of section 265 of the Armed Forces Reserve Act, a careful reading of the language of these provisions reveals that they are not precisely
 
 in pari materia,
 
 that is “upon the same matter or subject.” Indeed, when Title 10 was amended in 1962, the readjustment pay provisions were codified in section 687. Congress, however, detached the sanctuary provision from the readjustment pay statute and codified it under section 1163, which dealt with limitations on the power to separate members of reserve components.
 
 See
 
 Act of Sept. 7, 1962, Pub.L. No. 87-651, §§ 102, 106, 76 Stat. 506-08 (1962).
 

 A close reading of these cases reveals that the district courts merely relied on the administrative practice of the Army, and did not give full consideration to the express language and purpose of the statutory provisions. Had the courts examined the language of the statute, and focused upon the interpretation of “active duty” rather than the readjustment pay statute, they might indeed have concluded that the agency’s interpretation of section 1163(d) was based on an impermissible interpretation and application of the statute.
 

 Even assuming doubt, the defendant’s suggested interpretation of the applicable statutory provisions would resolve all doubts against the plaintiff. The defendant’s interpretation does violence to the very purpose of a generous benefactory statute. Rather than to seek to grant protection and sanctuary, the defendant would urge an interpretation designed to deprive specifically designated beneficiaries of rights granted by an Act of Congress.
 

 LTC. Ulmet falls within the class of persons whom Congress intended to benefit. He served continuously for over 15 years, including 2 years in Vietnam. After serving in Vietnam, he continued to serve on tours that lasted as long as a year. After over 18 years of active service, it would be inequitable, and in violation of the spirit of the statute, to withhold the earned benefits which flow from the sanctuary provision.
 

 Finally, the Army suggests that if LTC. Ulmet’s active service time is recalculated, he will fall short of the 18 years of service required to qualify for the sanctuary provision. Even though the Army’s records show that LTC. Ulmet has served for over 18 years, it nevertheless claims that 19 days of active duty remain unsubstantiated, leaving LTC. Ulmet 8 days short of qualifying for sanctuary. The court will not say that the request for a remand to recompute the time served on active duty is a subterfuge by the Army. It seems clear, however, that to recompute the time served at this late date, and then claim that LTC. Ulmet has not met the statutory requirement of 18 years of active service, would be a gross inequity.
 

 CONCLUSION
 

 In light of the plain language of 10 U.S.C. § 1163(d), and in the absence of a clearly expressed legislative intent to the contrary, the court holds that the time served by LTC. Ulmet on active duty for training is to be included in computing the time required for sanctuary under section 1163(d), and retirement under 10 U.S.C. § 3911. Having accumulated over 18 years of active service time, LTC. Ulmet is entitled to sanctuary under the terms of the statutory provision. Accordingly, the decision of the Claims Court is reversed.
 

 REVERSED.