**Lieutenant Colonel Albertis WILSON**

v.

**The UNITED STATES.**

No. 484–87C.

United States Claims Court.

May 22, 1989.

John W. Toothman, Alexandria, Va., attorney of record, for plaintiff. John D. Grad and Grad, Toothman, Logan & Chabot, P.C., of counsel.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for the U.S. Jonathan S. Baker, Dept. of Justice, and LTC William C. Kirk and MAJ Robert C. McFetridge, Dept. of Army, of counsel.

## OPINION

MEROW, Judge:

This military pay case comes before the court on motions for summary judgment filed by the parties, together with stipulated facts as to quantum.[1] At issue is whether plaintiff was denied a right to remain on active duty under 10 U.S.C. § 1163(d).

### Facts

Plaintiff enlisted in the United States Army in 1963. He subsequently was commissioned as an officer in the United States Army Reserve and in the Regular Army and was discharged as a captain on February 1, 1980, having, at that time, some 16 years of active duty service. Plaintiff then became a member of the Army Reserve and, as a lieutenant colonel (LTC), received orders to report by October 3, 1983 to Fort McPherson, Georgia, for a special active duty training tour of 179 days, to and including March 28, 1984. Plaintiff completed 18 years of active duty service during this training tour. Retirement was possible with 20 years of service. 10 U.S.C. § 3911 (1982). On February 6, 1984 plaintiff wrote to Army headquarters in Washington, D.C. requesting that he be retained on active duty under the "sanctuary" provisions of 10 U.S.C. § 1163(d), which then stated as follows:

[A] member of a reserve component who is on active duty and is within two years of becoming eligible for retired or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

No response to plaintiff's letter of February 6, 1984 has been submitted. Plaintiff was not retained on active duty after his tour ended on March 28, 1984.

On August 10, 1984 plaintiff requested that he be recalled to active duty to complete 20 years of service for retirement purposes. This request was "disapproved" by a written response dated October 5, 1984.

By a letter dated January 5, 1985, counsel for plaintiff wrote the Secretary of the Army to request that the situation be reviewed and that recall orders be issued so plaintiff "may be permitted to complete his 20 years of active duty and retire." The Army responded by a letter dated February 22, 1985 from William D. Clark, Principal Deputy Assistant Secretary (Manpower and Reserve Affairs), which stated (in relevant part):

Section 1163(d), 10 United States Code, does not give Reserve members who complete 18 years active federal service (AFS) while on Active Duty for Training (ADT) or Special Active Duty for Training (SADT) the right to be continued on active duty solely for the purpose of completing 20 years of service for retirement purposes. Officers on ADT/SADT should understand that future service in an ADT/SADT status is based upon valid requirements as determined by the Department of the Army rather than upon the amount of AFS accumulated by the officer.

While Major Wilson is not automatically entitled by law to further active duty, he is neither precluded from such service. However, future service depends upon the existence of a valid requirement and Major Wilson's selection as the best qualified officer available. The Department of the Army retains the right to make such determinations.

On August 13, 1987 plaintiff filed his complaint in this court seeking back pay, allowances and benefits from March 27, 1984, reinstatement to active duty, and other relief.

---

1. A prior unpublished interlocutory order filed October 14, 1988 concerning liability is, with limited modifications, incorporated in this opinion.

On December 30, 1987, 10 U.S.C. § 1163(d) was amended by Pub.L. No. 100–224 to read:

Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty (*other than for training*) and is within two years of becoming eligible for retired or retainer pay under a purely military system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

(Emphasis added.)

### Discussion

Plaintiff has moved for summary judgment based upon the decision in *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir. 1987). Relying on the plain language of 10 U.S.C. § 1163(d) prior to its amendment in 1987, the Federal Circuit held in *Ulmet* that the time served by LTC Ulmet on active duty for training was to be included in computing the time required for sanctuary under § 1163(d).

Defendant's motion for summary judgment relies on the December 30, 1987 amendment to 10 U.S.C. § 1163(d) which removed any officer on a tour of active duty for training from eligibility for 18-year "sanctuary." Defendant also argues that, by reason of the above-quoted February 22, 1985 letter from Deputy Assistant Secretary Clark, plaintiff's March 28, 1984 release from active duty became "approved by the Secretary" so as to come within the exception to "sanctuary" as provided in 10 U.S.C. § 1163(d) both before and after the 1987 amendment. Supplemental briefs requested by the court have also been filed in this matter concerning the word "involuntarily" as used in 10 U.S.C. § 1163(d). Defendant argues that service by the member for an active duty for training tour is mutually consensual such that release from active duty at the end of the training tour cannot be "involuntary" as required in 10 U.S.C. § 1163(d) for sanctuary.

Plaintiff argues that any application of the 1987 amendment of 10 U.S.C. § 1163(d) to render plaintiff ineligible for sanctuary during his special active duty for training would offend constitutional due process principles. Plaintiff also argues that the "involuntary" release from duty issue was decided in *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir.1987), so that it is not open for consideration in this case. Plaintiff argues that the release from active duty at the end of a fixed training tour is "involuntary," as that term is used in 10 U.S.C. § 1163(d).

With respect to plaintiff's argument that application of the 1987 amendment of 10 U.S.C. 1163(d) to plaintiff's prior tour of duty would offend constitutional due process principles, it is concluded that, to the contrary, Congress could validly so act. The statutory right to military pay is within the control of Congress and is always subject to change. *See United States v. Larionoff*, 431 U.S. 864, 869, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977); *Alberico v. United States*, 783 F.2d 1024 (Fed.Cir. 1986); *Norman v. United States*, 183 Ct.Cl. 41, 392 F.2d 255 (1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969). Only the President and Article III judges have constitutional protection with respect to congressional reduction of their compensation. U.S. Const. art. II, § 1, cl. 7, art. III, § 1; *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980).

Accordingly, it is concluded that Congress could, in 1987, enact valid legislation which would restrict the eligibility of officers for 10 U.S.C. § 1163(d) sanctuary to those who reached 18 years of active duty service on a tour of duty, before or after 1987, which was other than for training. The question raised by defendant's motion and plaintiff's opposition is whether the 1987 amendment to 10 U.S.C. § 1163(d) was intended by Congress to apply to prior tours of duty.

The 1987 amendment at issue did not overrule the decision in *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir.1987). The amendment does not serve to eliminate active duty for training time as counting toward the 18 years required for 10 U.S.C.

§ 1163(d) sanctuary or the 20 years required for retired pay under 10 U.S.C. § 3911. The amendment merely states that an officer on a "training" tour of duty does not become eligible for sanctuary. Presumably, if an officer obtained 18 years of active duty service, training or otherwise, and was then called to active duty other than for training, sanctuary would be available. In the present case, as plaintiff reached his 18–year mark while on a 1984 training tour of duty, it must be decided whether the 1987 amendment renders him ineligible.

Defendant argues the general principle that new law must be applied in pending cases. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). However, this does not resolve the problem because the basic question is whether Congress, in the 1987 legislation, added the words "other than for training" to apply to past tours of duty. As noted in *United States v. Larionoff,* 431 U.S. 864, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977), it is the congressional intent which is controlling.

Defendant cites floor statements by two legislators, Representative Beverly B. Byron and Senator John Glenn, as supporting application of the 1987 amendment to the 1984 tour of duty involved in this case. Representative Byron's statement speaks of preventing "a windfall never intended by law for a small group of reservists who may come on active duty for training and then, as a result of a recent court decision, may remain in an active status until they qualify for retirement benefits; * * *." 133 Cong.Rec. H11509–10 (daily ed. Dec. 16, 1987). Senator Glenn's remarks noted that a loophole in 10 U.S.C. § 1163(d) had been found by one court to allow certain reservists on training duty to claim retirement sanctuary and stated that, with respect to the amendment, "the correction restores the original intent of the section

and is appropriate." 133 Cong.Rec. S18344 (daily ed. Dec. 17, 1987).

These floor remarks are essentially neutral as to the application of the 1987 language to prior tours of duty. The legislation, itself, is silent on the matter. Other recent legislation overruling a court decision has expressly dealt with its application to prior time periods. For example, when Congress disagreed with the ruling in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), concerning military retirement pay, the legislation overruling this holding, Pub.L. No. 97–252, §§ 1001–1006, 96 Stat. 730 (1982), 10 U.S.C. § 2408(c)(1), contained a clear expression, by stated date, as to its applicability to prior pay periods. *See Fern v. United States,* 15 Cl.Ct. 580 (1988), *appeal filed* (Fed.Cir. No. 89–1106). It is not the court's function to add or subtract to the legislation as written. *Ricker v. United States,* 184 Ct.Cl. 402, 396 F.2d 454 (1968).

It is concluded that, if Congress had intended that the 1987 language be applied to render officers on training tours of duty prior to its enactment ineligible for sanctuary, this would have been expressly spelled out in the legislation. *Bowen v. Georgetown University Hospital,* —— U.S. ——, 109 S.Ct. 468, 471–75, 102 L.Ed.2d 493 (1988) ("Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). At the time plaintiff completed his 18–year active duty service requirement, the language of 10 U.S.C. 1163(d), as interpreted in *Ulmet v. United States,* 822 F.2d 1079 (Fed.Cir.1987), provided for retirement sanctuary.[2] No training duty exception was then expressly present. Just as plaintiff's active duty pay for 1984 must be based on the pay rate then set by legislation, so must his eligibility for sanctuary be determined by 10 U.S.C. § 1163(d) as then in effect.

**2.** While defendant urges that the 1987 legislation also constitutes an interpretation of the language in effect in 1984, the Federal Circuit's decision in *Ulmet* still remains controlling precedent on this issue for the Claims Court. Moreover, the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one. *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331–32, 4 L.Ed.2d 334 (1960); *Jefferson County Pharm. Assn. v. Abbott Labs.,* 460 U.S. 150, 165 n. 27, 103 S.Ct. 1011, 1021 n. 27, 74 L.Ed.2d 882 (1983).

Next, the question whether plaintiff was "involuntarily released" on March 28, 1984 from his training tour must be resolved.

For purposes of civil service retirement, a separation resulting from expiration of a period for which a temporary or fixed-term appointment was made is normally considered to be involuntary. *See Sullivan v. United States*, 4 Cl.Ct. 70 (1983), *aff'd*, 742 F.2d 628 (1984). If this principle can also be applied to a military training tour, release from active duty at the scheduled expiration of the tour would normally be "involuntary."

However, 10 U.S.C. § 1163(d) somewhat differs from the civil service retirement situation in that, if applicable, the sanctuary provision requires two additional years of active duty. For a reserve member on a limited training tour who has a civilian career, remaining on active duty for an additional two-year tour of military active duty may not be a feasible undertaking. It is understandable that Congress has provided that only "involuntary" release is prohibited after the 18 years of service is achieved. As voluntary releases after 18 years of service are clearly contemplated since the statute prohibits only an involuntary release, the issue of whether a particular release was voluntary or involuntary must be resolved based on the individual circumstances presented. *See Sullivan v. United States, supra; Awtry v. United States*, 161 Ct.Cl. 681, 685, *cert. denied*, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964). This is also consistent with the principle that persons who must serve to be entitled to pay must show they were ready, willing and able to serve in order to recover back pay for the period involved. *United States v. Wickersham*, 201 U.S. 390, 399–400, 26 S.Ct. 469, 472, 50 L.Ed. 798 (1906); *Corrigan v. United States*, 153 Ct.Cl. 392, 398 (1961). If a member serving a limited active duty tour for training was not ready, willing and able to continue on active duty for an additional two years, no claim for back pay could arise for lost sanctuary under 10 U.S.C. § 1163(d). Rather, the release from the limited active duty training tour under this circumstance would be voluntary, as the continued active duty service

for two more years, which would generate the pay entitlement, was not contemplated or sought.

The record in the instant matter shows that plaintiff was ready, willing and able to serve an additional two years and so informed the Army by his letter of February 6, 1984 prior to his release on March 28, 1984. Thus, this case is controlled by *Ulmet v. United States*, 822 F.2d 1079 (Fed. Cir.1987), as in that case the plaintiff also sought sanctuary prior to his release from active duty and the court ruled in favor of plaintiff's sanctuary entitlement.

■ In the circumstance where a member on active duty for training with 18 years of service affirmatively seeks sanctuary under 10 U.S.C. § 1163(d), an ensuing release from active duty prior to 20 years of service is "involuntary." Such an "involuntary" release would be valid only if "approved by the Secretary." 10 U.S.C. § 1163(d).

■ Accordingly, it must be resolved whether plaintiff's 1984 release was "approved by the Secretary" such as to come within the exception to the 10 U.S.C. § 1163(d) requirement for retention on active duty. The text of the previously-quoted letter from William D. Clark, Principal Deputy Assistant Secretary, is sufficient to refute the present assertion that plaintiff's 1984 release from active duty was, or became, so approved. The matter at issue was plaintiff's request for recall, not retention on active duty. Plaintiff left active duty when his training tour ended, without secretarial action. Moreover, the Secretary could not have addressed the question at issue because he was operating on the erroneous premise, given the subsequent ruling in *Ulmet*, that plaintiff had no entitlement to retention on active duty. Thus, the Secretary, or his delegate, did not consider or render any decision that, despite plaintiff's entitlement to sanctuary, his release was, nevertheless, approved.

## Conclusion

As plaintiff qualified for sanctuary under 10 U.S.C. § 1163(d) but did not obtain it, he

is entitled to recover the equivalent monetary compensation together with an appropriate correction of records pursuant to 28 U.S.C. § 1491(a)(2).

The parties have stipulated that back pay for the sanctuary period less civilian pay offsets (*Motto v. United States*, 175 Ct.Cl. 862, 360 F.2d 643 (1966)), equals $24,906.55 and retired pay computed from March 1, 1986 through June 30, 1989, less appropriate adjustments, equals $46,367.96. The total monetary recovery is $71,274.51. It is agreed that 20 percent will be withheld for federal income tax.

Accordingly, it is ORDERED:

(1) final judgment shall be entered in favor of plaintiff in the amount of $71,-274.51 with 20 percent of the judgment amount to be withheld for federal income tax, with no costs assessed;

(2) all appropriate records shall promptly be corrected to reflect the service and pay entitlement here adjudicated.