rehearing, 421 F.2d 703, 190 Ct.Cl. 925 (1970). The latter case also is authority for the proposition that a claim for illegal discharge accrues all at once upon plaintiff's removal from military service.

 Assuming, only for discussion, that plaintiff had a cause of action for back pay dated from his last and honorable discharge finally granted in 1958 (although it was, in fact, backdated to June 6, 1938), he would still be barred by the 6-year statute of limitations expiring in 1964, long before his petitions for judicial relief in 1971 and 1972. However, this court has refrained from stretching the statute of limitations in an illegal discharge case so that it would commence to run not from the date of discharge but from the date of some subsequent decision illustrating its illegality. O'Callahan v. United States, 451 F.2d 1390, 196 Ct.Cl. 556 (1971).

Brief mention will now be made of the unjust conviction statute, 28 U.S.C. §§ 1495, 2513, although it has not been pleaded. Plaintiff cited only 28 U.S.C. § 1491, this court's general jurisdictional statute. The unjust conviction statute has always been strictly construed. Osborn v. United States, 322 F.2d 835 (5th Cir. 1963); Smith v. United States, 168 Ct.Cl. 242 (1964); Roberson v. United States, 124 F.Supp. 857, 129 Ct.Cl. 581 (1954), cert. denied, 349 U.S. 954, 75 S.Ct. 883, 99 L.Ed. 1279 (1955); Roberts v. United States, 126 Ct.Cl. 947 (1953); Weiss v. United States, 91 F.Supp. 742, 120 Ct.Cl. 1 (1950); Ekberg v. United States, 76 F. Supp. 99, 110 Ct.Cl. 267 (1948); Hadley v. United States, 66 F.Supp. 140, 106 Ct.Cl. 819 (1946), cert. denied, 329 U.S. 815, 67 S.Ct. 635, 91 L.Ed. 695 (1947); Viles v. United States, 95 Ct.Cl. 591, cert. denied, 317 U.S. 629, 63 S.Ct. 45, 87 L.Ed. 508 (1942); Prisament v. United States, 92 Ct.Cl. 434 (1941). Plaintiff in the instant case has neither alleged nor complied with the requirements of the statute and cannot prevail in this case. Without the recitals specified by the statute (innocence as certified by the

pardon or certificate of the appropriate court, etc.) plaintiff's pardon creates no cause of action. It is an act of executive grace, no more.

Upon consideration of the moving papers aforesaid, and the established precedents, the court is of the opinion that the claim must be denied. Therefore, defendant's motion to dismiss is granted and the petition is dismissed.

Morris E. **MANSELL III**
v.
The **UNITED STATES.**
No. 50–71.

United States Court of Claims.
Nov. 10, 1972.

Morris E. Mansell III, pro se.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on January 18, 1972. Exceptions to the commissioner's opinion and report were filed by defendant and the case has been submitted to the court on the briefs of the parties and oral argument of plaintiff, *pro se*, and counsel for defendant. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 131(c).

### OPINION OF COMMISSIONER

WHITE, Commissioner:

The plaintiff, a member of the United States Naval Reserve who was released from active duty by the Navy on December 2, 1969, sues in the present case for a readjustment payment under the provisions of 10 U.S.C. § 687(a).

It is my opinion that the plaintiff is entitled to recover.

The plaintiff served continuously on active duty with the Navy from August 31, 1962, until December 2, 1969. His initial service was as an enlisted man in the Regular Navy, from August 31, 1962, until February 1, 1967. While serving as an enlisted man, the plaintiff was selected for flight training as a pilot; and, in connection with such selection, the plaintiff executed an active-duty agreement in which he agreed that, as consideration for the aviation training, he would obligate himself to serve on active duty with the Navy for 3½ years after the completion of flight training.

After successfully completing his flight training, the plaintiff was commissioned as an ensign in the United States Naval Reserve on February 2, 1967, and began a 3½-year tour of active duty with the Navy under the agreement mentioned in the preceding paragraph of this opinion.

While serving on active duty overseas as a pilot with Fighter Squadron Fifty-Three, the plaintiff received orders dated August 11, 1969, from the Bureau of Naval Personnel stating that, as of November 1969, he was detached from Fighter Squadron Fifty-Three and directed to proceed and report to the Commanding Officer of Training Squadron Seven at the Naval Air Station in Meridian, Mississippi, for further service. These orders were conditional, however, in that the plaintiff could accept them if —and only if—he would agree to extend his tour of active duty (which was then scheduled to expire on August 2, 1970) to July 31, 1971. For reasons that are explained in finding 3, the plaintiff did not regard the prospective assignment to Training Squadron Seven at the Naval Air Station in Meridian, Mississippi, as sufficiently attractive to justify an agreement on his part to extend his tour of active duty from August 2, 1970, to July 31, 1971. Accordingly, the plaintiff informed the Bureau of Naval Personnel that he did not wish to accept the orders of August 11, 1969.

In taking the action mentioned in the last sentence of the preceding paragraph, the plaintiff did not intend or desire to shorten in any way his then-current 3½-year tour of active duty. On the contrary, the plaintiff positively desired—and assumed that he would be permitted—to remain on active duty until the end of the 3½-year period on August 2, 1970. Indeed, the plaintiff hoped that arrangements could be made whereby he would remain on active duty beyond August 2, 1970, but in an assignment different from the one involved in the orders of August 11, 1969; and he intended to work toward the making of such arrangements upon returning to the continental United States from his overseas assignment.

The plaintiff returned to the continental United States near the end of October 1969 from his overseas assignment. After his return, the plaintiff received from the Bureau of Naval Personnel orders dated October 16, 1969, which cancelled his orders of August 11, 1969, and directed that he be separated from active duty by the end of November 1969.

As the plaintiff did not wish to be separated from active duty prior to August 2, 1970, which would be the end of the 3½-year period covered by his active-duty agreement, the plaintiff informed the Bureau of Naval Personnel by means of a message dated November 5, 1969, that he desired to remain on active duty until the expiration of the 3½-year period of his obligated service. No condition as to assignment or otherwise was imposed by the plaintiff in connection with his request that he be permitted to remain on active duty until the end of his 3½-year tour, although he did indicate a preference as to assignment.

In a communication dated November 7, 1969, the Bureau of Naval Personnel advised the plaintiff that if he desired to remain on active duty after November 30, 1969, he must execute the 1-year extension of his active-duty agreement, as provided in the orders of August 11, 1969.

The plaintiff was still unwilling to have his 3½-year tour of active duty extended for an additional year in accordance with the orders of August 11, 1969, since that would have involved an assignment to Training Squadron Seven at the Naval Air Station in Meridian, Mississippi, and the plaintiff did not desire to perform duty with that organization at that location for an extended period of active duty.

Subsequently, in accordance with a first endorsement dated November 28, 1969, to the plaintiff's orders of October 16, 1969, he was released from active duty effective December 2, 1969.

The statutory provision on which the plaintiff relies in the present case is 10 U.S.C. § 687(a), which states in pertinent part as follows:

* * * a member of a reserve component * * * who is released from active duty involuntarily, or because he was not accepted for an addi-

tional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service * * * by two months' basic pay of the grade in which he is serving at the time of his release. * * * .

 It is my opinion that the plaintiff clearly qualifies for a readjustment payment under the plain, unambiguous statutory language quoted in the preceding paragraph.

In the first place, the plaintiff was "a member of a reserve component," since he was performing active duty as an officer of the United States Naval Reserve immediately prior to and at the time of his release from active duty.

In the second place, the plaintiff had "completed, immediately before his release, at least five years of continuous active duty." His continuous active duty with the Navy immediately before his release on December 2, 1969, totaled more than 7 years and 3 months. It is true that the greater part of this total period of active duty was performed by the plaintiff as a member of the Regular Navy, and that only the last portion, extending from February 2, 1967, to December 2, 1969, was performed by the plaintiff as a member of the United States Naval Reserve. However, 10 U. S.C. § 687(a), in requiring "at least five years of continuous active duty," does not differentiate between active duty performed as a member of a reserve component and active duty performed in some other capacity.

In the third place, the plaintiff was "released from active duty involuntarily." His release from active duty on December 2, 1969, was contrary to his own choice, preference, and desire. The plaintiff positively desired—and the Navy knew that the plaintiff positively desired—to complete the full 3½-year period of active duty provided for in his active-duty agreement with the Navy. Furthermore, the plaintiff's desire in this respect was not conditioned in any way. The imposition of a condition by the plaintiff, i. e., an assignment different from the one involved in the orders of August 11, 1969, was not in connection with the completion of his 3½-year period of active duty, but was in connection with the proposed 1-year extension of such period. If the plaintiff had been permitted to remain on active duty until the end of the 3½-year period in accordance with his unconditional wish, and he had then conditioned an extension of such period upon some factor which the Navy was unwilling to accept, the plaintiff's release from active duty under such circumstances at the end of the 3½-year period on August 2, 1970, would have been voluntary and would not have qualified him for a readjustment payment under the provisions of 10 U. S.C. § 687(a). Henneberger v. United States, 403 F.2d 237, 242, 185 Ct.Cl. 614, 624 (1968). However, we are not dealing with that sort of situation in the present case.

Despite the plaintiff's positive and unconditional desire—of which the Navy was aware—to complete the 3½-year period of active duty under his active-duty agreement, the Navy released the plaintiff from active duty 8 months prior to the date on which the 3½-year period was scheduled to expire. Under these circumstances, a determination that the plaintiff's early release from active duty on December 2, 1969, was voluntary from his standpoint, rather than involuntary, would do violence to the plain meaning of these terms in the English language.

For the reasons previously set out in this opinion, the plaintiff is entitled to recover. The amount of the recovery can be determined in subsequent proceedings under Rule 131(c).