**William F. READE**

v.

**The UNITED STATES.**

**No. 337–86C.**

United States Claims Court.

March 25, 1988.

Francis C. Newton, Jr., Boston, Mass., for plaintiff.

Howard Lipper, Washington, D.C., with whom was Acting Asst. Atty. Gen. James M. Spears, for defendant. Lt. Col. Kirk and Major Robert McFetridge, U.S. Army, of counsel.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

Plaintiff's complaint, filed May 28, 1986, seeks to recover back pay and allowances for a 3-year tour of duty with the United States Army Reserve, which tour allegedly was withheld improperly after plaintiff had been selected for the assignment. On November 21, 1986, defendant, filed a motion to dismiss for failure to state a claim upon which relief can be granted. Inasmuch as matters outside the pleadings were included in the motion papers, at argument on June 24, 1987, defendant's motion to dismiss was ordered to be treated as a motion for summary judgment. At argument, issues were raised that had not been briefed by the parties; and supplemental briefing thereon was completed on March 9, 1988. Discovery has been completed, and the material facts are not in dispute. Disposition by summary judgment is appropriate.

▇ In this case the factual evidence and argument of counsel were considered under the standards enunciated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the gloss there given to *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The summary judgment rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. A complete failure of proof concerning an essential element of the nonmoving party's case entitles the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553–54. A movant for summary judgment has the burden of showing the absence of genuine issues as to any material facts. *Adickes v. Kress*, 398 U.S. at 159, 90 S.Ct. at 1609. This does not mean that the burden is on the movant to produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. The movant's burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.

For the reasons that follow, defendant's motion for summary judgment is allowed. The complaint is to be dismissed.

In 1978, plaintiff was a major assigned to the 187th Infantry Brigade in the 94th U.S. Army Reserve Command, with headquarters at Bedford Armed Forces Reserve Center, Hanscom AFB, Massachusetts. On August 24, 1978, an investigation was initiated into allegations that plaintiff had received Army Reserve overpayments, and had failed to take appropriate action to return the overpayments. The investigation concerned a lump sum disability payment, payments for reserve drills, and payments for a tour of active duty training. The investigating officer concluded that plaintiff knew of the overpayments and did not take reasonable efforts to insure repayment to the Government, and recommended that a letter of reprimand (LOR) be issued and made a part of plaintiff's official military personnel file (OMPF). On December 6, 1978, the Commanding General directed an LOR be made a part of plaintiff's OMPF for 5 years.

On June 24, 1979, plaintiff was transferred to the United States Army Reserve Control Group (Reinf), Reserve Component Personnel and Administrative Center (RCPAC), St. Louis, Missouri. RCPAC is a field operating agency under the jurisdiction of the Adjutant General. The Adjutant General serves under the Army Chief of Staff. AR 10–5, ¶ 2–31 (Nov. 1, 1978). On February 27, 1980, plaintiff formally appealed to the Office of Adjutant General

for a review of the LOR and for relief for denial of administrative due process.

While the appeal was pending, plaintiff learned that tours of active duty in full time manning (FTM) positions were available in certain Fifth Army units. The Fifth Army, headquartered in Fort Sam Houston, Texas, is one of the numbered armies (CONUSA) and is commanded by the Commanding General of Forces Command, who, in turn, is under the command of the Army Chief of Staff. AR 10–42, ¶ 2–b (Apr. 15, 1975). The Fifth Army and RCPAC are attached to two completely separate commands.

On May 1, 1980, plaintiff applied for an FTM position in the Fifth Army, 84th Division (TNG), headquartered in Milwaukee, Wisconsin, and on May 23, 1980, appeared before a selection board in Milwaukee. Plaintiff was selected as the best qualified applicant for the position of Assistant G–4, grade: Major, and the selection board requested an assignment to headquarters 84th Division, with an effective date of entry on active duty of June 15, 1980. On June 4, 1980, Fifth Army Headquarters submitted a request for orders to assign plaintiff to active duty for a 3–year period at the 84th Division (TNG) at Milwaukee, Wisconsin.

On June 10, 1980, the Office of Adjutant General, in response to plaintiff's appeal on the LOR, reported the Department of the Army Suitability Evaluation Board (DASEB) had denied the appeal. The DASEB determined that plaintiff had not submitted evidence needed to show that the reprimand was either unjust or untrue, and concluded that plaintiff did not act in good faith in trying to straighten out his pay records. The DASEB recognized that the initial administrative processing of the LOR was defective, but that the irregularity was detected, rectified and correct procedures were subsequently followed. The DASEB concluded that the initial processing error was not prejudicial and did not deny plaintiff due process.

After the May 23, 1980, interview with the 84th Division Selection Board, plaintiff had telephone conversations with the 84th Division's military personnel officer, Major Ronald J. Lamping, and Major Glenn D. Cassidy, the enlisted personnel assignment officer. On June 5, 1980, plaintiff learned that Fifth Army had given its final approval, and that RCPAC was being requested to issue orders. On June 11, 1980, plaintiff learned that the papers were at RCPAC, and that he was to report for duty on June 15, 1980.

On June 12, 1980, Col. R.A. Culbertson, Senior Army Advisor, 94th Army Reserve Command, by telephone advised Fifth Army Headquarters that plaintiff had received an LOR from the 94th ARCOM. On June 16th, the Senior Army Advisor confirmed this information by a letter to Headquarters, Fifth Army, that enclosed plaintiff's LOR, with related documents.

On June 13, 1980, on the basis of the telephone conversations with Major Lamping and Major Cassidy, plaintiff left his home in Braintree, Massachusetts, with the intention to drive to Milwaukee and to report for active duty on June 15, 1980. Shortly after departure, on June 13, 1980, plaintiff was given a message to call the 84th Division. Plaintiff placed the telephone call, and was told that the Fifth Army had told the 84th Division Headquarters that plaintiff was "to hold in place" for written orders.

On June 26, 1980, plaintiff was advised that Headquarters, Fifth Army had disapproved his application for the FTM position of Assistant G–4, 84th Division. RCPAC never issued the orders originally requested by Fifth Army.

In plaintiff's appeal to the Adjutant General of the LOR, on July 15, 1981, the Office of The Judge Advocate General (TJAG) concluded that plaintiff was entitled to relief because the report of investigation and the LOR were filed improperly in plaintiff's OMPF. TJAG stated that, although any one of several errors might be considered harmless, the cummulative effect was such as to require removal, and that new proceedings could be initiated to place an LOR in plaintiff's OMPF.

Further review of plaintiff's appeal was made by the Board for Correction of Mili-

tary Records (ABCMR), which concluded that there was reasonable doubt that plaintiff had been afforded due appeal process under the regulation, that the LOR had been filed in plaintiff's OMPF in violation of the governing regulation, and that the interest of justice would best be served by removing the LOR, and all associated documents, from plaintiff's OMPF. The Board's recommendation was accepted, and, on August 14, 1981, the Adjutant General was directed to remove from plaintiff's OMPF the report of the investigation and the LOR dated December 6, 1978, and all appeal correspondence pertaining thereto.

In contradiction of this order, the material directed to be removed from plaintiff's OMPF in fact was not removed. On March 8, 1982, based on nonselections for promotion in 1980 and 1981, plaintiff, at his request, was transferred to the Retired Reserve, in the grade of major.

Plaintiff requested further relief from the ABCMR. On June 27, 1984, the ABCMR found that review of plaintiff's OMPF revealed that the material relative to the LOR had not been removed and was still a matter of record. The ABCMR further found that the various selection boards that had considered plaintiff's promotion to the grade of LTC in 1980, 1981, 1982 and 1983 had reviewed an OMPF from which the LOR material had not been removed. The ABCMR further concluded that it could find no basis to void plaintiff's nonselections for promotion or to direct his promotion to the grade of LTC, USAR. The ABCMR stated it would be just to remove from the OMPF all letters or material which refer to the nonselections for promotion to the grade of LTC, USAR, and to remove all material pertaining or relating to his application to the Board which was previously directed to be removed.

With respect to plaintiff's application for assignment to the FTM position with the Fifth Army, the Board concluded that the Fifth Army's actions to deny the assignment were appropriate based on the information that then was available. The Board concluded: "That personnel involved believed that the interest of the Army would

best be served, at that time, if the applicant were denied the opportunity for filling the FTM position."

On June 24, 1984, the Adjutant General was notified of the ABCMR decision and directed, among other things, to remove the investigation report and LOR dated December 6, 1978, and all related correspondence, from plaintiff's OMPF. The Adjutant General was also directed:

4. That following completion of the foregoing corrective actions, the records of WILLIAM F. READE, JR., be referred for appropriate standby promotion consideration to the grade of lieutenant colonel, United States Army Reserve.

5. That, in the event he is selected for promotion, the Records of WILLIAM F. READE, JR., be further corrected as follows:

a. his transfer to the Retired Reserve on 8 March 1982 be declared null and void;

b. he be promoted to the grade of lieutenant colonel, U.S. Army Reserve, with an appropriate date of rank;

c. he be credited with Reserve participation, to include, annual training and active duty for training and drills from 8 March 1982 to the date he is restored to the active Reserve;

d. he be credited with at least 50 retirement points per retirement year from 8 March 1982 until the date he is restored to the active Reserve; and

e. he be afforded an opportunity to apply for a Full Time Manning position in the grade of lieutenant colonel.

In this case, plaintiff seeks to recover back pay and allowances for the 3-year period he would have served in the FTM position pursuant to the order requested by the Fifth Army on June 4, 1980. In order to prevail, plaintiff must show that, in fact, he was assigned to that position.

This case does not involve the issue of a promotion to a higher grade. Plaintiff seeks back pay as a major for 1095 days from June 15, 1980. *See, e.g., Grieg, v. United States*, 640 F.2d 1261, 1268–69, 226 Ct.Cl. 258 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982);

*Skinner v. United States,* 594 F.2d 824, 830, 219 Ct.Cl. 322 (1979); *Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (1979). Nor does this case involve the issue of a new appointment to a particular grade or position. The question is whether plaintiff was ordered from active reserve status to active duty status by reassignment from RCPAC to a FTM position in the 84th Division (TNG) of the Fifth Army.

■ The parties recognize that, in order for the reassignment to be effective, the action must be ordered by the appropriate command. Plaintiff contends that when he started to Milwaukee on June 13, 1980, he did so on the basis of verbal orders validly issued. During oral argument, plaintiff claimed that verbal orders from Major Lamping, acting on behalf of the Adjutant General, Fifth Army, were effective to make the reassignment. Plaintiff asserted that the Fifth Army exercised command control over RCPAC, and that once the Fifth Army had requested plaintiff be reassigned to its command, RCPAC could not refuse the request. Subsequently, plaintiff abandoned this position. Plaintiff's final argument is that he was assigned to the FTM position when he received verbal orders from Major Cassidy, at RCPAC, directing him to report to the new station. On either theory, plaintiff must fail. Verbal orders are not sufficient to constitute a reassignment from RCPAC to the Fifth Army.

■ The June 4, 1980, request for orders from the Fifth Army to RCPAC was not a self-executing order to a subordinate command. RCPAC and the Fifth Army are attached to two completely separate commands. Individuals are bound by orders that originate in their respective commands. The Fifth Army has no authority to order RCPAC to transfer one of its members to the Fifth Army. Plaintiff was assigned to RCPAC, and the Commanding General of RCPAC (the Adjutant General) exercises command control over all members of the nonunit Individual Ready Reserve, Standby Reserve, and Retired Reserve. AR 10–5, ¶ 2–31d(4) (Nov. 1, 1978).

It is beyond question that RCPAC never issued written orders to reassign plaintiff. The applicable regulations provide that orders must be issued for reassignment to be effective, and that such orders must be in writing. AR 140–10, ¶ 1–4 (June 1, 1979) provides:

1–4. Orders. Except for enlistments or reenlistments, assignments, reassignments, transfers, and attachments will be announced in written orders (AR 310–10). Orders will include the paragraph (and subparagraph if applicable) of the regulation which authorizes the action.

In order to be reassigned to the FTM position, plaintiff's assignment to the Fifth Army had to be completed by RCPAC through issuance of written orders.

Plaintiff relies on the authority to use verbal orders in an emergency. AR 310–10, ¶ 1–9 (June 15, 1978) provides:

Verbal orders. When the situation demands immediate action, normally in a combat situation, a commander may issue verbal orders.

a. When the verbal order involves expenditure of public funds, confirmatory written orders will be issued within 30 calendar days. If the written order is issued more than 30 calendar days after the effective date of the verbal order, the servicing finance office and the next higher command will be provided written justification for the delay and the action taken to prevent recurrence. The finance office will file the explanation with the order as a substantiating document.

Plaintiff has not established, and the record does not so warrant, that there was an urgent need to fill the FTM position. The situation did not involve an exigency of the type common in combat situations. The provisions of AR 310–10 ¶ 1–9 have no application to this situation. In any event, there was no confirmation in writing within 30 calendar days, as required by AR 310–10, ¶ 1–9(a).

The fact that written orders were never issued is fatal to plaintiff's claim for back pay for the FTM position. This precludes any right to recovery based upon a subsequent allegedly improper discharge.

Defendant's motion for summary judgment is ALLOWED. The Clerk is directed to dismiss the complaint. No costs.