**Lieutenant Colonel James A. GREEN**

v.

**The UNITED STATES.**

**No. 763–87C.**

United States Claims Court.

Aug. 10, 1989.

John W. Toothman, Alexandria, Va., for plaintiff. John D. Grad and Grad, Toothman, Logan & Chabot, P.C., of counsel.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Lt. Col. William C. Kirk and Major Robert C. McFetridge, Department of the Army, of counsel.

## OPINION

MEROW, Judge.

This military pay case is presented on cross dispositive motions. Plaintiff, a lieutenant colonel (LTC) in the United States Army Reserve, seeks active duty pay and retirement pay stemming from the Army's alleged failure to comply with 10 U.S.C. § 1163(d), as construed in *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir.1987).

### Facts

Upon graduation from West Point in 1963, plaintiff was commissioned in the Regular Army and served until his honorable discharge in 1978. He was then commissioned in the Army Reserve having, at that time, over 14 years of active duty service. As a Reserve officer, with his consent, plaintiff could obtain orders for tours of active duty. The documents filed in this matter show that the initial order plaintiff obtained for a tour of active duty for training (ADT) as a Reserve officer was on February 23, 1979. The order of that date provided (in part):

> You are ordered to active duty for training ADT for the period indicated plus allowable travel time. Upon completion of the period of ADT, unless sooner relieved or extended by proper authority, you will return to the place where you entered ADT and be relieved from such duty.
>
> Period: 26 days plus allowable travel time
>
> Report to: HQ, FORSCOM, DCSOPS, Docu Div., Ft. McPherson, GA
>
> Reporting date: between 0730 & 0800 hrs 5 MAR 79
>
> Attached to: HQ, FORSCOM, Ft. McPherson, GA
>
> Purpose: ADT/Staff Off (DTY W/DCSOPS–AFOP–DD)

Subsequent orders plaintiff obtained provided similar short tours of active duty with a longer tour of approximately one year of Special Active Duty Training (SADT) at Fort Gordon, Georgia ordered in September of 1982.

In July of 1985 plaintiff obtained orders for a five month SADT tour in Washington, D.C. to develop an alternative method of reporting to Congress the budget effects on Reserve components with respect to the distribution of equipment purchased. During this tour of training duty which, under the orders received, ended on December 18, 1985, plaintiff's active duty service time passed the 18 year mark.

Subsequent to 1985, plaintiff obtained some 16 orders for ADT for periods ranging from one day to 20 days of active duty. For example, the order dated November 1, 1986 provided three days of ADT for plaintiff to "ATTEND GALLANT EAGLE FOLLOW–UP CONFERENCE" and also included the language:

> I UNDERSTAND THAT I CANNOT BE RETAINED TO COMPLETE 20 YRS OF

AS [ACTIVE SERVICE] FOR RET PUR (AR 635–100) IF I COMPLETE 18 OR MORE YEARS OF ACTIVE FEDERAL SERVICE WHILE SERVING ON THIS PERIOD OF ADT.

On July 14, 1987, plaintiff obtained orders for 66 days of ADT at East Point, Georgia. On August 21, 1987 plaintiff sent the following letter, through the chain of command, to Headquarters, Department of the Army:

SUBJECT: Retention on Active Duty

1. I am currently on a SADT tour at the 335th Signal Command, East Point, Georgia.

2. I have exceeded a total of eighteen (18) years of active federal service.

3. In accordance with 10 USC, 1163(d) and recent federal court interpretations of that law, I request retention on active duty to complete a normal service retirement.

James A. Green /s/
JAMES A. GREEN
LTC, SC

The Secretary of the Army delegated his authority under 10 U.S.C. § 1163(d) to approve the involuntary release from active duty of Reserve component members to the Assistant Secretary of the Army (Manpower and Reserve Affairs). That official executed a decision that "[p]ursuant to 10 U.S.C. §§ 681 and 1163(d), the release from active duty of LTC James A. Green, 256–60–3804, is hereby approved, to be effective November 30, 1987." LTC Green went off active duty after November 30, 1987.

The instant litigation was commenced on December 21, 1987.

### Discussion

The so-called sanctuary provision involved in this matter, 10 U.S.C. § 1163(d), provides that a Reserve component member on active duty who is "within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary."

As plaintiff could retire with 20 years of active duty service, 10 U.S.C. § 3911, the sanctuary point under 10 U.S.C. § 1163(d) would be reached upon attaining 18 years of active duty service. Plaintiff reached this point during his Washington, D.C. tour of training duty from July–December 1985. Plaintiff claims entitlement to active duty pay from the end of this tour of duty on December 18, 1985 until 20 years of service is attained and retired pay thereafter.

Defendant seeks dismissal of plaintiff's claims on the same basis asserted in *Wilson v. United States*, 16 Cl.Ct. 765 (1989), *appeal docketed*, No. 89–1598 (CAFC July 20, 1989), the retroactive application of the Act of December 30, 1987, Pub.L. No. 100–224, 101 Stat. 1536. This Act amended 10 U.S.C. § 1163(d) by limiting it to Reserve component members on active duty "other than for training."

For the reasons expressed in *Wilson v. United States, supra,* defendant's position on retroactive application of Pub.L. No. 100–224 is rejected and plaintiff's entitlement will be resolved under the language of 10 U.S.C. § 1163(d) in effect during his tours of active duty.

Under 10 U.S.C. § 1163(d), after November of 1985 (18 years active duty point), plaintiff could not be *involuntarily* released from active duty except with the approval of the Secretary. Defendant asserts that prior to November of 1987 plaintiff was not involuntarily released from his tours of duty. Plaintiff asserts that as each active duty tour ended, he was automatically involuntarily released in violation of 10 U.S.C. § 1163(d).

It is concluded that after November 1985 and prior to November 30, 1987, plaintiff was not involuntarily released from an active duty tour. In each instance, the orders plaintiff received specified the duration of the active duty tour. If the tour was to be extended, it was necessary for the orders to be amended to provide a basis for continued pay entitlement. *See Reade v. United States,* 14 Cl.Ct. 531 (1988). Several of plaintiff's tours were extended by amended orders. Plaintiff was in a position to request continued active duty and,

under 10 U.S.C. § 1163(d), the Army was obliged to provide it, absent action by the Secretary. The absence of a written request for continued active duty, equivalent to the application a Reserve component member must make to obtain an active duty training tour under AR 135–200, leads to the conclusion that each release from an active duty training tour prior to November 30, 1987 was voluntary. It is only reasonable that the Army first obtain a Reserve member's request for an extension and resulting knowledge of the member's willingness and ability to continue on active duty before it can be assessed liability for continuing back pay on the basis that the expiration of the training tour of duty ordered resulted in an "involuntary" release.

In assessing liability for an "involuntary" release of a Reserve officer in *Mansell v. United States*, 199 Ct.Cl. 796, 468 F.2d 933 (1972), the court emphasized that "involuntary" (as then used in 10 U.S.C. § 687(a) concerning readjustment payments) meant "contrary to his own choice, preference and desire" of which the Navy was aware. 199 Ct.Cl. at 801, 468 F.2d at 936. In *Mansell, supra,* the Court of Claims also ruled that the release occurring at the expiration of a tour of duty would be voluntary. 199 Ct.Cl. at 802, 468 F.2d at 936. *See also Merriott v. United States,* 163 Ct.Cl. 261, 264 (1963), *cert. denied,* 379 U.S. 838, 85 S.Ct. 76, 13 L.Ed.2d 45 (1964) ("There is no allegation or showing that, at or about the time of his release, plaintiff objected to being released or sought to remain in the Army.").

 Thus, within the context of 10 U.S.C. § 1163(d) the term "involuntarily" contemplates prior knowledge on the part of the Army as to a Reserve member's desire to continue on active duty and the member's availability and ability to do so for the substantial additional period of time (up to two years) involved. This prior knowledge was present in *Ulmet v. United States* and *Wilson v. United States, supra.* Most Reserve members serving short active duty training tours, and also having civilian career responsibilities, would not, it is assumed, welcome an interpretation that such brief training tours must automatically be extended two years under 10 U.S.C. § 1163(d) when the 18 years service point is reached. A more reasonable interpretation, consistent with the consensual nature of active duty training tours for Reserve members, is that 10 U.S.C. § 1163(d) prohibits a release at the end of an ordered tour of duty if the Reserve member, with the requisite 18 years of active duty service, duly requests an amendment extending the tour, unless the Secretary then approves the release contrary to the member's request.

 Plaintiff did request an extension of his training tour while on active duty in 1987 such that the release from this tour, against his expressed request, would be involuntary under 10 U.S.C. § 1163(d). However, this release was approved by the Secretary's designated official. In addition to the express authority present in 10 U.S.C. § 1163(d), the Secretary has broad discretion to release a Reserve member from active duty. *Abruzzo v. United States,* 206 Ct.Cl. 731, 737, 513 F.2d 608, 611 (1975); *Burns v. United States,* 9 Cl.Ct. 273, 277 (1985). Plaintiff has not established any basis for back pay in this circumstance. *Alberico v. United States,* 783 F.2d 1024 (Fed.Cir.1986).

### Conclusion

Accordingly, as plaintiff has not been released involuntarily from any tour of duty prior to November 30, 1987 and that release was approved by the authority of the Secretary, no entitlement to sanctuary involving back pay under 10 U.S.C. § 1163(d) exists. In this circumstance, it is ORDERED that, on the motions filed, final judgment shall be entered dismissing the complaint with no costs to be assessed.