**Okhoo HANES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–366C.**

United States Court of Federal Claims.

Aug. 6, 1999.

Okhoo Hanes, Napa, CA, pro se.

Elizabeth W. Newson, U.S. Department of Justice, Washington, D.C., with whom were David W. Ogden, Assistant Attorney General, Director David M. Cohen, and Assistant Director Anthony H. Anikeeff.

## OPINION

FIRESTONE, Judge.

This military pay case is before the court on cross-motions for judgment upon the administrative record pursuant to Rules of the United States Court of Federal Claims ("RCFC") 56.1. Plaintiff claims that she was involuntarily discharged from the United States Coast Guard (the "Coast Guard") and seeks an award of separation pay. The issue to be decided is whether the Coast Guard's decision to offer plaintiff a one-year extension of active duty and to reject plaintiff's offer of a "tour of duty" beyond one year amounted to an involuntary discharge, entitling plaintiff to separation pay. For the reasons set forth below, the court grants defendant's motion for judgment upon the administrative record.

## FACTS

The facts are drawn from the administrative record. Plaintiff, Okhoo Hanes, an attorney, served as an active duty reserve lieutenant in the Coast Guard from September 11, 1983, until her honorable discharge on June 30, 1990, when her active duty contract expired. In 1989 plaintiff failed to be selected for promotion. Thereafter, on December 27, 1989, six months before the expiration of her contract, plaintiff volunteered for an active duty contract extension, stating:

I request that my current active duty agreement be extended for a period to cover another *tour of duty*. I desire and am willing to accept the minimum duration provided for a tour of duty *under applicable regulations*. I hereby volunteer for such an additional tour of duty. (emphasis added)

Plaintiff's commanding officer ("CO") recommended that plaintiff's request be approved for a one-year extension. The CO based the recommendation on Coast Guard regulations that apply when reserve officers like the plaintiff, who have been passed over for promotion, request an extension of active duty. In particular, Article 1–B–2d(4) of the Coast Guard Personnel Manual states that "[r]eserve officers who have once failed of selection for promotion may request an extension on active duty," but "[i]f granted, an extension under this circumstance will terminate no later than the end of the promotion year in which the officer will be considered a second time for promotion." As the CO explained in his recommendation to the Commandant, "[a] one-year extension will retain [plaintiff] on active duty for the promotion year in which she will be considered for promotion a second time."

On February 26, 1990, a Reserve Officer Extension Board approved plaintiff's request to remain on active duty, authorizing a one-year extension until June 30, 1991. By letter dated March 26, 1990, plaintiff advised the Commandant of her belief that a one-year extension did not qualify as the "tour of duty" for which she had volunteered. Consequently, plaintiff stated that she considered the Coast Guard's offer of a one-year extension, instead of a two-year "tour of duty," which she construed to consist of at least two years on active duty, to amount to an "involuntary discharge." Plaintiff therefore requested that she be discharged as of June 30, 1990, at the completion of her initial service agreement, with separation or severance pay pursuant to 10 U.S.C. § 680(b) (1988) (current version at 10 U.S.C. § 12312 (1994)), 10 U.S.C. § 1174(c) (1988) (amended 1990), and the Coast Guard Pay Manual.

On April 4, 1990, plaintiff's CO recommended that plaintiff's claim for separation pay due to an alleged constructive involuntary discharge be denied. As grounds for the denial, the CO referenced 10 U.S.C. § 679 (1988) (current version at 10 U.S.C. § 12311 (1994)), and Article 1–B–2d(4) of the Coast Guard Personnel Manual. In particular, the CO asserted that section 679 gives the Commandant the authority to extend a reserve officer's active duty agreement for a period of one to five years and that the applicable Coast Guard service policy found

at Article 1–B–2d(4) limited any extension to one year. In light of these provisions, the CO determined that the Coast Guard could offer only a one-year extension and that plaintiff's request for a voluntary extension beyond one year was outside the regulations. The CO further explained that the Coast Guard had briefed plaintiff on the Article 1–B–2d(4) service policy when it discussed with her the command's endorsement of her original request for an extension.

On April 4, 1990, plaintiff wrote to her CO to reiterate her contention that none of the applicable laws and regulations prohibited her from volunteering for another "tour of duty." Plaintiff further stated that she did not interpret Article 1–B–2d(4) as requiring approval of an extension of only one year. Plaintiff did not provide the Coast Guard with any acceptance of the one-year offer.

By letter dated April 27, 1990, the Coast Guard released plaintiff from active duty effective June 30, 1990. The Coast Guard explained in the letter that plaintiff would not receive separation pay because she had voluntarily declined the Coast Guard's offer of an extension of her active duty agreement.

On June 25, 1990, plaintiff appealed the denial of separation pay to the Comptroller General of the United States ("GAO"), arguing that the Coast Guard wrongfully denied her separation pay as provided for by 10 U.S.C. § 1174(c).[1] By letter dated May 28, 1991, the GAO rejected her claim, stating that there was no indication from the record that plaintiff was "either discharged or released from active duty involuntarily" or that she was "denied an additional tour of duty."

Plaintiff then submitted an application to the Department of Transportation Board for Correction of Military Records (the "Board") on August 26, 1993. Plaintiff asked the Board to correct her military record to reflect that she was involuntarily discharged and to grant her separation pay. On June 30, 1994, the Board denied plaintiff's request on the grounds that the claim was barred by the three-year statute of limitations provided for under 10 U.S.C. § 1552(b).[2] On November 4, 1994, the United States Court of Appeals for the District of Columbia Circuit held that the Soldiers and Sailors Civil Relief Act tolls the three-year statute of limitations while a Coast Guard officer is on active duty. *See Detweiler v. Pena,* 38 F.3d 591 (D.C.Cir. 1994). By virtue of the D.C. Circuit's holding, plaintiff's case before the Board was timely.

In the meantime, plaintiff had filed suit in this court on June 24, 1996, challenging the Board's decision and requesting separation pay, back pay, and reinstatement to the Coast Guard. Plaintiff also asked the court to consider any civil rights claims that plaintiff wished to assert. Pursuant to the decision in *Detweiler,* defendant recognized that plaintiff's claim before the Board was timely and made an unopposed motion to remand the case to the Board for consideration of the merits of plaintiff's claims. On December 11, 1996, the court granted defendant's motion.

On June 27, 1997, the Board issued its decision on the merits, denying plaintiff's request for correction of her military records to reflect that she was involuntarily discharged.[3] The Board considered plaintiff's

---

**1.** At the time of plaintiff's appeal, 10 U.S.C. § 1174(c)(1) (1988) stated as follows:

[A] member of an armed force other than a regular member who after September 14, 1981, is discharged or released from active duty and who has completed five or more, but fewer than 20, years of active service immediately before that discharge or release is entitled to separation pay computed under subsection (d)(1) or (d)(2), as determined by the Secretary concerned, if—
(A) the member's discharge or release from active duty is involuntary; or
(B) the member was not accepted for an additional tour of active duty for which he volunteered.

**2.** The Board stated, however, that it had conducted a "cursory review of the potential merits" of plaintiff's application and concluded that, even if it were to waive the statute of limitations, "it is unlikely that the applicant would obtain severance pay." *See generally Miller v. United States,* 29 Fed.Cl. 107, 121 (1993) (cursory review required for Board to determine whether the waiver of limitations is "in the interest of justice") (citing *Allen v. Card,* 799 F.Supp. 158, 164–65 (D.D.C.1992)).

**3.** The Board specifically limited its decision to the issue of whether or not plaintiff was involuntarily discharged. The Board stated that "[w]hether the applicant's release from active duty ... amounted to an involuntary separation

application, all materials submitted in support thereof, the Coast Guard's submissions, and applicable statutes, regulations, and policies.

The Board considered plaintiff's argument that the one-year extension the Commandant granted did not amount to a "tour of duty" under section 1174(c), and, that as a result, her decision to reject the "extension" did not bar her separation pay claim. In reaching its decision, the Board determined that active duty agreements for an additional tour of duty are controlled by 10 U.S.C. § 679. The Board noted that section 679 provides that active duty agreements may last from one to five years and are subject to regulations promulgated by the Secretary of Transportation. The Board then noted that the Secretary has delegated this rulemaking authority to the Coast Guard Commandant. *See* 49 C.F.R. § 1.45 (1999). The Board explained that pursuant to this authority, the Coast Guard has promulgated regulations regarding active duty extensions for reserve officers like plaintiff who have been passed over for promotion. In particular, Article 1–B–2d(4) of the Coast Guard Personnel Manual provides that the Coast Guard may only grant officers who have once failed to be selected for promotion an extension that allows the officer to be considered for promotion a second time. In this case, plaintiff would have been eligible for promotion consideration after one year. Because plaintiff had once failed selection for promotion, the Board found that the Coast Guard committed no error or injustice in offering plaintiff a one-year extension of her active duty agreement rather than a longer "tour of duty" as requested by the applicant. The Board noted that plaintiff, without offering an explanation as to why the one-year term was unacceptable, asked to be released rather than accept the one-year extension. The Board determined that plaintiff's decision to leave the Coast Guard was voluntary and denied plain-

tiff's request to change her military records to reflect an involuntary discharge.

On February 17, 1998, plaintiff filed an amended complaint in this court. In the amended complaint, plaintiff retained her request for separation pay but dropped her request for back pay and reinstatement. Plaintiff also sought to withdraw her request for relief pertaining to her civil rights claims without prejudice. On August 5, 1998, plaintiff filed a motion for leave to file an additional amendment to the complaint. In the amendment, plaintiff reasserted her request for back pay and reinstatement. Plaintiff's second motion to amend was granted by order dated September 10, 1998. Oral argument on the merits was heard on May 20, 1999.[4]

## DISCUSSION

Motions for judgment on the administrative record are treated in accordance with the rules governing motions for summary judgment. *See* RCFC 56.1; *Nickerson v. United States*, 35 Fed.Cl. 581, 588 (1996), *aff'd*, 113 F.3d 1255 (Fed.Cir.1997).

■ This court's review of military pay cases is limited. To overturn a correction board's decision, a plaintiff must show by "cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that the determination was unsupported by substantial evidence." *Dodson v. United States*, 988 F.2d 1199, 1204–05 (Fed.Cir.1993) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir. 1992)).

### I. Plaintiff's Request for Separation Pay

Plaintiff's case turns on questions of law. The ultimate issue to be decided is whether the Coast Guard's decision to offer plaintiff a one-year extension and reject plaintiff's request for an extension of more than one-year

---

that would entitle her to separation pay pursuant to 10 U.S.C. § 1174(c) is a matter beyond the jurisdiction of the Board."

4. On May 18, 1999, two days prior to oral argument, plaintiff submitted to the court motions to amend her complaint for a third time and for class certification. The court denied plaintiff's

motions to amend her complaint and for class certification by separate order issued August 6, 1999. On May 18, 1999, plaintiff also submitted an affidavit to supplement the record. The request to file an affidavit also was denied on August 6, 1999.

amounted to an involuntary discharge, creating an entitlement to separation pay. Under the governing statute and its implementing regulations, a reservist is involuntarily discharged if the Coast Guard rejects a reservist's unconditional request for an additional "tour of active duty." *See* 10 U.S.C. § 1174(c)(1)(B); Coast Guard Pay Manual 10–I–3. Plaintiff contends that she was involuntarily discharged because (1) the Coast Guard could not lawfully impose a one-year limit on plaintiff's offer to extend her active duty; and (2) even assuming, arguendo, the Coast Guard could limit an extension to one-year, a one-year extension does not qualify as a "tour of duty" under the separation pay statutes and regulations.

With respect to the one-year limit the Coast Guard placed on plaintiff's extension, plaintiff makes several arguments. First, plaintiff asserts that the limitation is inconsistent with section 1174(c), which was designed to encourage reservists to volunteer for longer service. Building on this premise, plaintiff argues that Article 1–B–2d(4) of the Coast Guard Personnel Manual, the service policy the Coast Guard cited as the basis for its offer of a one-year extension, is unlawful because it restricts the length of extensions that passed-over reservists may obtain. Second, plaintiff argues that Article 1–B–2d(4) is irrational because there is no guarantee that a second promotion board will convene within the twelve-month extension. As support for this proposition, plaintiff cites 14 U.S.C. § 251 (1994), which states that the Secretary "is not required to convene a board to recommend officers for promotion to a grade when no vacancies exist in the grade concerned, and he estimates that none will occur in the next twelve months."

Plaintiff also questions the validity of Article 10–I–3 of the Coast Guard Pay Manual, which defines when a release is voluntary. Article 10–I–3 states that "[a] reservist is considered to be involuntarily released when a tour of [active duty] is completed, volunteers for an additional tour of duty, and the Coast Guard does not extend or accept the volunteer request for the additional tour of duty." Plaintiff asserts that this regulation places an unlawful additional condition on the

entitlement to separation pay under section 1174(c) because it defines involuntary release to include refusals to "extend" the volunteer's request, when the statute only uses the term "accept." Plaintiff argues that Article 10–I–3 is so ambiguous that it allows the Coast Guard to escape from its statutory duty to honor separation pay in practically every situation. Plaintiff suggests that under the regulation the Coast Guard could manipulate the system such that all requests for extensions of tours of duty could be lawfully rejected, and the Coast Guard would never have to provide separation pay.

In addition to the foregoing, plaintiff argues that, in any event, a twelve month extension is not a "tour of duty" within the meaning of section 1174(c), and, therefore, her rejection of the one-year offer did not undercut her entitlement to separation pay. Plaintiff bases her assertion on a section of the Coast Guard Personnel Manual that lists "tour length standards for commissioned and chief warrant officers." In each of the tour lengths listed, the minimum duration is two years. Based on these sample tour lengths, plaintiff maintains that a tour of duty must last a minimum of two years. Thus, plaintiff asserts that the Coast Guard's offer of a one-year extension instead of a two year "tour of duty" was a rejection of her unconditional request for another "tour of duty" within the meaning of section 1174(c). According to plaintiff, this renders her subsequent discharge involuntary and entitles her to separation pay under the plain language of section 1174(c).

It is the court's view that plaintiff's arguments are based on a fundamental misreading of the applicable law and regulations, and that for the reasons set forth below plaintiff's claim for separation pay based on section 1174(c) properly was denied.

**A. The Coast Guard's Decision to Impose a One–Year Limit on an Extension Was Lawful**

■ There is no question that the Coast Guard had the statutory authority to impose a one-year limit on plaintiff's request for another tour of duty. The parties agree that section 679 controls requests for extensions

of active duty.[5] Section 679(b) sets a minimum active duty length of one year. This limit applies both to the creation of new active duty agreements and to extensions of active duty. *See* 10 U.S.C. § 679(a)–(b). Moreover, section 679(c) specifically states that active duty agreements created under the statute "are subject to such standards and policies as may be prescribed by the ... Secretary of Transportation." *Id.* § 679(c).

In the instant case, the Secretary's delegate, the Coast Guard, has established pursuant to this authority a policy that "[r]eserve officers who have once failed of selection for promotion may request an extension on active duty," which, if granted "will terminate no later than the end of the promotion year in which the officer will be considered a second time for promotion." Coast Guard Personnel Manual, Article 1–B–2d(4).

It is undisputed that at the time of plaintiff's "Application for Retention on Active Duty," she was a "reserve officer who had once failed of selection for promotion." Pursuant to Article 1–B–2d(4) the Commandant was authorized to limit plaintiff's active duty extension to only one year.[6] Plaintiff has not given the court any basis for second-guessing the Coast Guard's policy manual. Indeed,

plaintiff has made no effort to show how she was adversely affected by a regulation that allowed her a full one-year extension. Where, as here, the regulation authorizing a one-year extension is consistent with the statute governing active duty agreements, there is no basis for invalidating the Coast Guard's regulation.

Plaintiff's contention that Article 1–B–2d(4) is irrational because there is no guarantee that a second promotion board will convene within the twelve-month extension period is without merit. There is no reasonable basis to conclude that plaintiff would not have been given an opportunity for promotion within the one-year extension the Coast Guard granted.

**B. Article 10–I–3 of the Coast Guard Pay Manual is Not Inconsistent With Section 1174(c)**

■ Plaintiff's further claim that Article 10–I–3, the Coast Guard's severance pay regulation, is unlawful also must be rejected. Plaintiff argues that under the governing statute, section 1174(c), the Coast Guard must make separation payments if it does not "accept" voluntary extension requests. The

---

5. Section 679 of Title 10 was renumbered to become 10 U.S.C. § 12311 in 1994. *See* National Defense Authorization Act for Fiscal Year 1995, Pub.L. No 103–337, § 1662(e), 108 Stat. 2663, 2991 (1994). Because both parties cite to section 679 and the section did not change in the renumbering, the court also will cite to section 679 for ease of reference. Section 679 states:

Active duty agreements

(a) To provide definite terms of active duty (other than for training) for Reserves with their consent, the Secretary concerned may make a standard written agreement with any member of a reserve component under his jurisdiction requiring the member to serve for a period of active duty (other than for training) of not more than five years. When such an agreement expires, a new one may be made. This subsection does not apply in time of war declared by Congress.

(b) An agreement may not be made under subsection (a) unless the specified period of duty is at least 12 months longer than any period of active duty that the member is otherwise required to perform.

(c) Agreements made under subsection (a) shall be uniform so far as practicable, and are subject to such standards and policies as may be

prescribed by the Secretary of Defense for the armed forces under his jurisdiction or by the Secretary of Transportation for the Coast Guard when the Coast Guard is not operating as a service in the Navy.

(d) If an agreement made under subsection (a) expires during a war or during a national emergency declared by Congress or the President after January 1, 1953, the Reserve concerned may be kept on active duty, without his consent, as otherwise prescribed by law.

6. Plaintiff argues that this service policy is permissive. Plaintiff states that a reserve officer "may" request a minimum extension of one year under Article 1–B–2d(4), but that this provision does not preclude a reservist from volunteering for another "tour of duty" longer than one year. Plaintiff's reading of the regulation apparently is based on her belief that an "extension" on active duty has a meaning distinct from "tour of duty." The Coast Guard, however, clearly intended Article 1–B–2d(4) to apply to all active duty agreements. The court does not read "may" to mean that plaintiff was entitled, at her discretion, to request a longer term. Contrary to plaintiff's view, the service policy is mandatory to the extent it allows for only a one-year extension. As a result, the court rejects plaintiff's argument.

Coast Guard regulation includes the word "extend" and requires the Coast Guard to pay separation benefits if it does not "extend" or "accept" a volunteer's request. Plaintiff contends that the Coast Guard's inclusion of the word "extend" gives the Coast Guard more flexibility than section 1174(c) allows and renders the Coast Guard's separation pay requirements unlawfully ambiguous.[7] This contention is without merit. Within the context of the regulation there is no substantive difference between the terms "extend" and "accept." Consequently, Article 10–I–3 does not give the Coast Guard any greater flexibility than provided for under section 1174(c). Moreover, the regulation is not so ambiguous as to render it invalid. The Coast Guard regulation requires separation pay when the Coast Guard rejects a lawful extension request. This is all that section 1174(c) requires.

### C. "Tours of Duty" May Be Limited to One Year

■ Plaintiff's contention that she is entitled to separation pay because the Coast Guard's one-year offer was not an offer for a "tour of duty" as contemplated under section 1174(c) also is without merit. As discussed above, section 679 is the only statute governing the length of active duty agreements. There is no separate statutory provision that addresses the duration of "tours of duty." Indeed, plaintiff recognizes that there is no statute or Coast Guard regulation that defines "tour of duty" in terms of duration. Plaintiff's sole support for her contention that a tour of duty in the Coast Guard must be at least two years is her reference to a provision in the personnel manual that lists "tour length standards for commissioned and chief warrant officers." It is not disputed that in each of the tour lengths listed the minimum duration is two years.

A general list of examples of tour lengths is not, however, a mandate that tour lengths must last a minimum of two years. In its submissions to the GAO, the Coast Guard explained that the referenced tour length standards are "management tools for total force planning" and that "[t]hey have little to do with the length of a reservist's extension on active duty which must be determined by the needs of the service at the particular time." More importantly, this general list must be read in conjunction with other more specific provisions of the manual, namely Article 1–B–2d(4), which limits extensions on active duty for reserve officers who have once failed of selection for promotion.

In this regard, plaintiff's case is strikingly similar to *Lawrie v. United States,* 227 Ct.Cl. 256, 647 F.2d 137 (1981). In *Lawrie,* a naval reserve member requested a two-year extension of his active duty agreement. *See id.* at 138. The Navy responded by offering Lawrie an extension for two years and three months. Lawrie declined the offer on the grounds that the tour was too long. Lawrie then requested readjustment or "separation" pay.[8] *See id.* at 139. In his request for pay, Lawrie contended that he was not obliged to accept the additional tour because the assignment was not a "normal tour," and, therefore, the Navy triggered its separation pay obligation when it rejected Lawrie's two-year offer. *See id.* at 140. Specifically, Lawrie argued that a normal tour consisted of only two years and that the Navy's two year and three-month offer was too long.

The Federal Circuit concluded that Lawrie did not qualify for separation pay. The Federal Circuit held that "[c]ontrary to plaintiff's assumption, the term 'tour of duty' is not a rigid or immutable concept." *Id.* at 141. Instead, the court recognized that a particular tour's duration may be influenced by several factors including geography, marital status, and of prime importance "the present

---

7. At argument plaintiff explained that certain "extensions" authorized under Coast Guard regulations are for less than one year and that if the Coast Guard "extends" for less than one year, the officer is not entitled to separation pay at the expiration of the extension. While this is apparently true, it has no bearing on this case because plaintiff was offered a full one year "extension"

and would have been entitled to separation pay if she had accepted the one year and had then failed again for promotion.

8. Lawrie's request for readjustment pay from the Navy is based on the same provision at issue in the instant case.

and future demands of the Service." *Id.* The court concluded:

> [A]s plaintiff could have extended his active duty, but chose to reject the additional tour assigned to him, his rejection of that tour was voluntary. He cannot now claim he was 'involuntarily' released from active duty for purposes of collecting [separation] pay.[9]

*Id.* at 142.

Plaintiff in the instant action cannot escape the *Lawrie* court's conclusions. As the record indicates, plaintiff requested that her "active duty agreement be extended for a period to cover another tour of duty" and stated that "I desire and am willing to accept the *minimum* duration provided for a tour of duty under applicable regulations." (emphasis added).[10] As discussed above, the Coast Guard, in accordance with its regulations, offered plaintiff a one-year extension. Thus, like the plaintiff in *Lawrie*, Ms. Hanes could have extended her active duty tour by accepting the Commandant's offer, but decided to reject it. Indeed, she rejected it after she was told that doing so would preclude an award of separation pay. Having decided to reject the Coast Guard's offer, plaintiff now must bear the consequences of her decision. Given the facts before this court, and the statutory and regulatory framework, the court concludes that plaintiff's decision to reject the Coast Guard's offer was voluntary, and, therefore, plaintiff was not involuntarily released for the purposes of receiving separation pay under 10 U.S.C. § 1174(c).

9. Plaintiff argues that *Lawrie* does not apply because plaintiff's request for an extension was not burdened by any restrictions. In support of this contention, plaintiff points to the first portion of the *Lawrie* decision, wherein the court explained how Lawrie initially had offered to extend his duty agreement but conditioned the offer on his choice of location. Although it is true that Lawrie's initial request for an extension specified the location in which he wished to serve, plaintiff's argument is unconvincing because Lawrie ultimately resubmitted "an unconditional request to remain on active duty," which both the Navy and the Court of Claims considered as the basis for Lawrie's claim.

10. Plaintiff stresses, as she must, that she volunteered for an additional tour of active duty with-

## II. Claims for Reinstatement, Correction of Plaintiff's Military Records, and Back Pay Based on Wrongful Discharge

In her second amended complaint, plaintiff seeks reinstatement, correction of her military records, back pay, and other unspecified relief for wrongful discharge. As this court already has determined that plaintiff was voluntarily released in accordance with valid Coast Guard regulations, plaintiff's claims for reinstatement, back pay, and correction of her military records based on wrongful discharge also must be dismissed. *See Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995) (stating that if plaintiff's retirement was voluntary, plaintiff "retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim"). The Federal Circuit recently has reaffirmed this position. *See Tippett v. United States*, 189 F.3d 1250, 1255 (Fed.Cir.1999).

## III. Plaintiff's Civil Rights Claims

In her second amended complaint, plaintiff also seeks to withdraw her civil rights claims without prejudice to allow plaintiff to resubmit these claims to this court at a later date. Defendant, citing *Anderson v. United States*, 22 Cl.Ct. 178, 179 n. 2 (1990), *aff'd*, 937 F.2d 623 (Fed.Cir.1991), argues that this court has no jurisdiction to consider cases arising from the Civil Rights Act of 1964. Plaintiff responds by asserting that, unlike the plaintiff in *Anderson*, her claims are based on specific statutory and regulatory rights. As the de-

out any restrictions or conditions. If this court construed plaintiff's request for extension on active duty to contain restrictions or conditions, the result would be clear. The United States Court of Claims, the predecessor to this court, has held that where a reserve officer makes a request for an extension of active duty conditioned upon some factor the service cannot accept, the officer's subsequent release is voluntary, and he is not entitled to separation pay. *See Henneberger v. United States*, 185 Ct.Cl. 614, 624, 403 F.2d 237, 242 (1968); *Mansell v. United States*, 199 Ct.Cl. 796, 802, 468 F.2d 933, 936 (1972) (stating the aforementioned proposition but awarding separation pay because the Navy released plaintiff before his original active service agreement expired).

fendant correctly asserts, however, plaintiff has misread *Anderson.* Although it is true that the *Anderson* court found that the plaintiff had no specific statutory right to reinstatement and back pay, that ruling was wholly separate from its ruling on plaintiff's civil rights claims. With respect to the civil rights claims, the court stated: "While this court has jurisdiction in military pay cases seeking reinstatement, back pay, and allowances generally, under 28 U.S.C. § 1491, it has no jurisdiction over cases arising under the Civil Rights Act. Jurisdiction over such cases resides in the district courts relative to violations of the Civil Rights Act." *Id.* at 179 (1990); *see Bunch v. United States,* 33 Fed. Cl. 337, 341 (1995), *aff'd,* 78 F.3d 605 (Fed. Cir.1996) (stating that "a claim premised on a violation of Title VII [of the Civil Rights Act of 1964] must be brought in district court, not in the Court of Federal Claims").[11]

The court will allow plaintiff to withdraw her civil rights claims. If plaintiff wishes to pursue such claims, however, she will have to do so in the appropriate federal district court.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **DENIED** and defendant's motion for judgment upon the administrative record is **GRANTED.** Plaintiff's motion to withdraw her civil rights claims is **GRANTED.** Each party is to bear its own costs. The clerk is directed to enter judgment accordingly.

---

11. In plaintiff's reply brief in support of her May 18, 1999 motions to amend her complaint and for class certification, plaintiff acknowledges that this court does not have jurisdiction over her civil rights claims. Plaintiff, without filing a motion, requests in her brief that this court transfer her civil rights claims to the United States District Court for the Northern District of California. As noted above, the court will allow plaintiff to withdraw her civil rights claims, and if she chooses, plaintiff may file these claims in the appropriate district court.